Timothy F. Broderick, Appellant, *v.* Cauldwell-Wingate Company, Inc., Respondent, et al., Defendants.

Argued April 11, 1950; decided July 11, 1950.

*Vine H. Smith, Robert Kilroe* and *Joseph A. McLaughlin* for appellant. I. There is evidence to support the verdict. (*Regan* v. *Eight Twenty Fifth Corp.,* 287 N. Y. 179; *Koenig* v. *Patrick Constr. Corp.,* 298 N. Y. 313; *Rosenberg* v. *Schwartz,* 260 N. Y. 162; *Hanley* v. *Central Sav. Bank,* 280 N. Y. 734; *Hooey* v. *Airport Constr. Co.,* 253 N. Y. 486; *De Lee* v. *Pardy Constr. Co.,* 249 N. Y. 103; *Caspersen* v. *La Sala Bros.,* 253 N. Y. 491; *Zurich Gen. Accident & Liability Ins. Co.* v. *Childs Co.,* 253 N. Y. 324.)

II. The dismissal of the complaint was erroneous for the further reason that the platform where the men were working and which collapsed, was a scaffold within the meaning of the State statutes and rules. III. The judgment of the Trial Term should be reinstated. (*Cornbrooks* v. *Terminal Barber Shops,* 282 N. Y. 217; *Saulsbury* v. *Braun,* 223 App. Div. 555, 249 N. Y. 618; *Harrison* v. *Argyle Co.,* 128 App. Div. 82, 198 N. Y. 628; *Williams* v. *First Nat. Bank of Syracuse,* 167 N. Y. 594; *Galloway* v. *Erie R. R. Co.,* 116 App. Div. 777, 192 N. Y. 545.)

*John F. X. Finn, Norman C. Mendes* and *Alfred A. Giardino* for respondent. I. Where carpentry work upon a building in course of construction is being done by a subcontractor in full charge thereof, it is contributory negligence as a matter of law for a carpenter employee of the carpentry subcontractor to venture out upon a deck which he was building when he knew that neither he nor his employer (the carpentry subcontractor) had provided for said deck either of two required safety devices, which it was the duty of said carpentry subcontractor to provide therefor, viz. (1) shoring underneath or (2) a " strongback " or overhead support. A fortiori where plaintiff himself was the very person who had the duty of installing the " strongback " or overhead support. (*Sieger* v. *Crow Constr. Co.,* 235 App. Div. 587; *Burnstein* v. *Haas,* 298 N. Y. 596.) II. A statement allegedly made from the ground floor by the general contractor's superintendent in response to a question from the first floor above, asked by the subcontractor's employee who was erecting a deck there and who was subsequently injured, that " There are no shores going in there. Go ahead. It is all right " was in no event an assurance that the alternative safety device of " strongback " or overhead support usually provided by carpenters for their own deckings could be or should be omitted. Nor was said alleged statement an assumption of control by the general contractor of the method of doing the carpentry work, which was entirely under the decision, direction and control of the carpentry subcontractor. (*Moore* v. *Wills, Inc.,* 250 N. Y. 426; *Ahbol* v. *Harden Contr. Co.,* 265 N. Y. 564; *Iacono* v. *Frank & Frank Contr. Co.,* 259 N. Y. 377; *Miller* v. *Home Owners' Loan Corp.,* 263 App. Div. 607; *Burke* v. *Ireland,* 26 App. Div. 487; *Callan* v. *Pugh,* 54 App. Div. 545; *Dimare* v.

*Driscoll Co.,* 241 App. Div. 736.)   III. A wooden "form" or decking, for use in laying a concrete floor, but not for workmen to walk on or stand on, is not a "scaffold" under the Labor Law.   (*Adelstein* v. *Roebling Constr. Co.,* 95 Misc. 125; *Caddy* v. *Interborough R. T. Co.,* 195 N. Y. 415; *Haughey* v. *Thatcher,* 89 App. Div. 375; *Brady* v. *Pennsylvania Steel Co.,* 134 App. Div. 372; *Welk* v. *Jackson Architectural Iron Works,* 184 N. Y. 519.)

DYE, J. Plaintiff-appellant, while employed as a carpenter on a construction job, sustained severe injuries when formwork which he was building for a concrete floor collapsed.   He has now sued the general contractor, Cauldwell-Wingate Company, Inc., hereinafter referred to as Cauldwell, the defendant-respondent on this appeal, asserting two causes of action, the first based upon common-law negligence and the second upon a failure to furnish safe scaffolding in violation of section 240 of the Labor Law.   The Chittenden Lumber Co., hereinafter referred to as Chittenden, was also joined as a codefendant charged with furnishing unsafe and defective materials, against whom Cauldwell filed a cross complaint for recovery over in the event that judgment was had against it.

At the end of plaintiff's case, the trial court dismissed all pleadings as to Chittenden and, at the end of the entire case, the second cause of action against Cauldwell on the statutory violation.   The case was eventually submitted to the jury on the issues of common-law and contributory negligence and resulted in a verdict in favor of the plaintiff on which judgment was entered.   On appeal, the Appellate Division unanimously affirmed the dismissal of the pleadings as to Chittenden but, by a divided court, reversed the judgment in plaintiff's favor and dismissed the surviving first cause of action based on a common-law tort.

Viewing the evidence in the light of the most favorable inferences, plaintiff can be said to have established that, on and before November 18, 1947, he was employed by Brennan & Sloan, subcontractors for the carpentry work in the erection of forms for concrete flooring at the United States Veterans' Hospital, Fort Hamilton, Brooklyn.   These concrete floors were to be poured in sections of the steel framing — designated as "bays" — which were about 20' x 20' in area.   Before pouring, each

bay was planked over with a retaining platform or deck which, in turn, was supported — according to the expert testimony — by either of two recognized methods, either by laying the deck on a 4 x 6 beam shored underneath by props resting on a " mudsill " (a base of heavy planking to keep the shores from sinking into soft ground) or by " strongbacks " (4 x 6 timbers laid across the top of the steel framing from which the deck was suspended by wires). Both methods were variously used on the job except that when the work area or other construction made it infeasible, a bay might be temporarily by-passed.

On the day in question, plaintiff and one Birkland, were putting in the formwork in a bay. Noticing that there was neither shoring nor strongbacks, plaintiff looked about for his immediate superior, Mr. Fischer, for instructions. Finding that Fischer was not in the vicinity, he called to two men on the ground below, one of whom he recognized as Mr. Paterno, Cauldwell's general superintendent. By plaintiff's testimony — which was flatly contradicted by Paterno — the following occurred: " I hollered down to the man, ' Are you going to put any shores underneath this 4 x 6?' The man looked up and he said, ' There are no shores going in there. *Go ahead. It is all right.*' " (Emphasis supplied.) Other witnesses substantially corroborated plaintiff's version of this conversation.

Plaintiff and his partner, working from a steel beam, then proceeded to deck over the bay. In finishing the work, however, it became necessary for them to move out onto the deck at which time the 4 x 6 broke at a knothole, precipitating the deck and both men twenty-five or thirty feet to the ground, resulting in severe personal injuries of which plaintiff now complains.

From the expert testimony, the jury could have found that, although subsoil utilities were at the time going in below this particular bay, the necessary shoring could have been accomplished by bridging the ditches, and, in that manner, securing a foundation for the mudsill. Of course, there was also the possibility of using strongbacks. In either event, it is undisputed that it was the responsibility of plaintiff's employer to supply whatever supports for formwork as were needed and that plaintiff was familiar with these normal precautions as it was part of his job to install them. However, the alleged conversation between the plaintiff and Cauldwell's superin-

tendent introduces a factor giving rise to a question which may not be resolved on the simple issue of defendant's negligence and plaintiff's freedom from contributory negligence, but rather one which must be resolved in the light of the relationship created by the circumstance of the moment — that is, whether Cauldwell's superintendent had assumed such a degree of control over the plaintiff's work as to render it liable for his ensuing injury. Dependent as it is on the interpretation to be given the alleged instruction " Go ahead. It is all right ", it obviously becomes a question of fact for the jury and may not be disposed of as a matter of law by the court.

At common law, a general contractor is not responsible for the independent negligent act of his subcontractor (*French* v. *Vix*, 143 N. Y. 90; *Hexamer* v. *Webb*, 101 N. Y. 377), and it is true that the mere retention of the power of general supervision to see that the over-all work proceeds properly and to co-ordinate the actions of several subcontractors on the site will not ordinarily cast him in damages for the negligence of any of the latter (*Moore* v. *Charles T. Wills, Inc.*, 250 N. Y. 426; *Ahbol* v. *Harden Contr. Co.*, 265 N. Y. 564). Nor is the general contractor obliged to protect employees of his subcontractors against the negligence of his employer or that of a fellow servant (*Iacono* v. *Frank & Frank Contr. Co.*, 259 N. Y. 377). These common-law rules, as is often the case, yield under the circumstances of a given case where the situation is governed by statute (e.g., Labor Law, § 240) or when the general contractor, by his act or conduct, assumes control and gives specific instructions which necessarily involve the safety of the subcontractors' men (see *Wawrzonek* v. *Central Hudson Gas & Elec. Corp.*, 276 N. Y. 412).

In the courts below it has been held that the platform which here collapsed was not a scaffold within the meaning of section 240. With this view we concur (*Welk* v. *Jackson Architectural Iron Works*, 184 N. Y. 519; *Wright* v. *Smith*, 152 App. Div. 476; *Brady* v. *Pennsylvania Steel Co.*, 134 App. Div. 372; note *Adelstein* v. *Roebling Constr. Co.*, 95 Misc. 125). This formwork was not intended as a place of work but, on the contrary, consisted of the work itself (cf. *Burnstein* v. *Haas*, 272 App. Div. 1051, affd. 298 N. Y. 596).

Taking up the issue of negligence, however, we are of the

view that the evidence of the conversation had with Paterno relative to proceeding without supports of any kind might well, to a jury, have constituted an assurance of safety (*Zurich Gen. Accident & Liability Ins. Co.* v. *Childs Co.*, 253 N. Y. 324) and, even more important, an assumption of *direct control* over the particular work in progress (*Hanley* v. *Central Sav. Bank,* 255 App. Div. 542, affd. 280 N. Y. 734). Implicit in the verdict — which followed a fair and comprehensive charge to which no material exception was noted — are findings that the conversation recited by plaintiff's witness did, in fact, occur; that defendant's employee was negligent in giving plaintiff a direction to work under an assurance of safety when he knew or should have known that a dangerous condition existed; and that the plaintiff, in reliance thereon, was free from contributory negligence.

By the same token, defendant's contention that plaintiff was guilty of contributory negligence as a matter of law cannot be sustained. It appears established that when a person in the capacity of a superior assumes control over a workman on a job and directs him to proceed under circumstances recognizable as dangerous, the subordinate workman has little, if any, choice in the matter but to obey it and, if he stays within the limits of the superior's instructions and is injured, he may not be penalized by a claim of contributory negligence as a matter of law. While, with the Labor Law aside, this issue remains in the case (cf. *Koenig* v. *Patrick Constr. Corp.*, 298 N. Y. 313) it survives as a question of fact for the jury (*Thomas* v. *Solvay Process Co.*, 216 N. Y. 265; *Zurich Gen. Accident & Liability Ins. Co.* v. *Childs Co., supra*).

Since the reversal in the Appellate Division of the judgment against Cauldwell was on " the law and the facts " we may order a new trial (Civ. Prac. Act, § 602).

The judgments should be reversed and a new trial granted, with costs to abide the event.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, FULD and FROESSEL, JJ., concur.

Judgments reversed, etc.