TIMOTHY F. BRODERICK, Plaintiff, *v.* CAULDWELL-WINGATE Co., INC., et al., Defendants.

CAULDWELL-WINGATE Co., INC., Third-Party Plaintiff, *v.* BRENNAN & SLOAN, INC., Third-Party Defendant.

Supreme Court, Special Term, Kings County, December 17, 1952.

*Nevius, Brett & Kellogg* for third-party defendant.

*Victor D. Werner* for Cauldwell-Wingate Co., Inc., third-party plaintiff.

*Joseph A. McLaughlin* for plaintiff.

*Rudser, Price, Haskell, Rafferty & Mulligan* for Cauldwell-Wingate Co., Inc., defendant.

F. E. Johnson, J. The third-party defendant moves (Rules Civ. Prac., rule 113) for summary judgment and dismissing the third-party complaint; that party countermoves for summary judgment.

The third-party action is predicated on the indemnity provisions contained in a contract between them as general contractor and subcontractor, respectively; the former seeks damages and expenses paid as a result of a suit brought by an employee of the third-party defendant for personal injuries.

The first trial of the negligence suit resulted in a verdict for the plaintiff; on appeal it was reversed and the complaint dismissed on the law and the facts (276 App. Div. 776).

The Court of Appeals reversed, and granted a new trial on the ground that there was a question for the jury as to whether an alleged conversation constituted an assurance of safety, and an assumption of direct control over the particular work in progress by the third-party plaintiff. (301 N. Y. 182.)

Thereafter for the first time, the general contractor (the original defendant), began, herein, the third-party suit; the third party moved to dismiss, or, in the alternative, to sever; there was a severing of the third-party claim from the main action (N. Y. L. J., Oct. 17, 1950, p. 835, col. 1).

Upon the second trial of the negligence action there was a verdict for the plaintiff; on appeal it was affirmed, without opinion.

The record herein reveals the following facts: Cauldwell, third-party plaintiff, the general contractor on the construction job, entered into a subcontract with the third-party defendant, under which the latter undertook to do certain concrete work, including the construction of solid concrete floors.

Broderick worked as a carpenter, in the employ of third-party defendant, erecting forms for concrete flooring; floors were to be poured in sections of steel framing, designated as bays, which were about twenty feet by twenty feet in area. The construction process as summarized in the charge at the second trial was: '' Before pouring, each bay was planked over with a retaining platform or deck which, in turn, was supported by either of two recognized methods, either by laying the deck on a 4 by 6 beam shored underneath by props resting on a mud sill, which means a base of heavy planking to keep the shores from sinking into soft ground, or by strongbacks, which means 4 by 6 timbers laid across the top of the steel framing from which the deck was suspended by wires. These methods were to be used

on the job, but when the work area or other construction made it impractical, a bay might be temporarily by-passed.''

On the day in question Broderick noticed there was neither shoring nor strong backs on the bay on which he was about to work; he looked about for his immediate superior for instructions, but did not see him; he did see the two men on the ground below, one of whom he recognized as the defendant's general superintendent. According to his testimony, which the jury believed, he called to that man and asked '' Are you going to put any shoring underneath this 4 by 6 '', who answered, '' No. Go ahead. It is all right.'' Broderick and his partner then proceeded to work on the bay in question; when they moved out on the deck the four by six broke, they were precipitated to the ground, resulting in injuries recited in the main action.

The pertinent parts of the contract between Cauldwell and Brennan, on which the former relies, are as follows:

6. The Subcontractor hereby agrees to and does hereby hold the Contractor harmless by reason of any loss or damage which the Contractor may incur to the Owner and/or third persons or which the Contractor may suffer by reason or on account of the operations of the Subcontractor, or by reason of the failure of the Subcontractor to follow and completely carry out all and singular the terms of the principal contract so far as the Subcontractor's work is concerned.

17. The Subcontractor hereby assumes the entire responsibility and liability for any and all injury to or death of any and all persons, including the Subcontractor's employees, and for any and all damage to property caused by or resulting from or arising out of any act or omission on the part of the Subcontractor in connection with this subcontract or of the prosecution of the work hereunder, and the Subcontractor shall save harmless the Owner and Contractor from and against any and all loss and/or expense which they or either of them may suffer or pay as a result of claims or suits due to because of or arising out of any and all such injuries, deaths and/or damage, and the Subcontractor if requested, shall assume and defend, at his own expense, any suit, action or other legal proceedings arising therefrom.

19. Under the provisions of the principal contract, the Contractor is held responsible for all damage to the work under construction, except as otherwise noted therein, during performance and until final completion and acceptance, even though partial payments may have been made under contract. He is held answerable for all damages that may occur to persons, property, animals, or vehicles from want of proper shoring, bracing, lighting, watching, boarding or enclosing, and for any accident arising from defective scaffolding or apparatus, or any negligence on the part of himself or his employees. Insofar as his work is concerned the subcontractor assumes all such obligations to the same extent as they are assumed by the Contractor.

The subcontractor agrees that nothing contained in this paragraph No. 19, shall limit or release the subcontractor from any of his obligations under paragraph 17 thereof.

The answer of defendant in this third-party claim contains, in addition to a general denial, four defenses: (1) Cauldwell was guilty of affirmative or active negligence, by reason of its assumption through its representative of supervision, direction and control over the acts of the original plaintiff Broderick; (2) by the verdict of the jury in favor of Broderick and judgment thereon, Cauldwell was found guilty of affirmative or active negligence; (3) Cauldwell, in violation of the conditions of article IV of the contract between the third-party litigants, exercised and assumed supervision and control of the act of Broderick, an employee of Brennan, and thus Cauldwell breached its contract with Brennan; (4) the contract between Cauldwell and Brennan provided that Cauldwell had obtained a master policy covering public liability on behalf of both the contractor and subcontractor and so that Brennan, the subcontractor was entitled to all the benefits and protection of said master policy.

This motion brings up the construction of the indemnity provisions of the contract quoted above; the third-party defendant contends that such provisions can not be construed to indemnify the third-party plaintiff against the latter's affirmative acts of negligence.

In *Thompson-Starrett Co.* v. *Otis Elevator Co.* (271 N. Y. 36), the court stated, at page 41: " It is the general rule long established that contracts will not be construed to indemnify a person against his own negligence unless such intention is expressed in unequivocal terms." (Citing cases.)

It must be kept in mind that the contract was not primarily one of indemnity; its primary purpose was to provide for the construction of the concrete work; the indemnity provisions were an incident thereof intended to afford Cauldwell protection against such claims for damages as might grow out of injuries to persons resulting from the prosecution of the concrete work undertaken by Brennan.

The language of the indemnity provisions seems too general to indicate that the subcontractor assumed the obligation for claims resulting from accidents to persons caused by the negligence of the contractor. (*Thompson-Starrett Co.* v. *Otis Elevator Co., supra; Schwartz* v. *Merola Bros. Constr. Corp.,* 290 N. Y. 145; *Walters* v. *Rao Elec. Equipment Co.,* 289 N. Y. 57; *Semanchuck* v. *Fifth Ave. & 37th St. Corp.,* 290 N. Y. 412.)

*Glass* v. *Geno-Jarboe, Inc.* (108 N. Y. S. 2d 426) is distinguished because the judgment was reversed, and the complaint dis-

missed on the ground that no cause of action in negligence was made. (280 App. Div. 378.)

Indemnity against principal wrongdoers to one less culpable is allowed although both are *equally* liable to a person injured. (*Schwartz* v. *Merola Bros. Constr. Co., supra; Scott* v. *Curtis*, 195 N. Y. 424; *Phoenix Bridge Co.* v. *Creem*, 102 App. Div. 354, affd. 185 N. Y. 580.) Consequently, Cauldwell can recover in this case only if it is guilty of *no more than passive negligence* (*Dudar* v. *Milef Realty Co.*, 258 N. Y. 415; *Schwartz* v. *Merola Bros. Constr. Co., supra*).

The judgment against Cauldwell is conclusive against both (third) parties as to Cauldwell's liability to Broderick, the latter's freedom from contributory negligence, and as to the amount of the damages, but the judgment is not conclusive as to the liability of *Brennan to Cauldwell.* This must be established by evidence outside the record in the last trial. (*Ocean Steam Nav. Co.* v. *Compania Transatlantica Espanola,* 134 N. Y. 461; *Fulton Co. Gas Co.* v. *Hudson Riv. Tel. Co.,* 200 N. Y. 287, 297.) The question of the *relative* negligence of the (third) parties to this action was not then litigated. The jury received no instructions as to their *relative* negligence. In fact the negligence of the third-party defendant was excluded from their consideration.

Since the question whether negligence is active or passive is one of fact for the jury, they *may* find that the factual disparity between the delinquency of Cauldwell and that of Brennan is so great as to, justifiably, warrant finding that Cauldwell's assumption of control and direction (through Paterno) was only passive negligence. (*McFall* v. *Compagnie Maritime Belge,* 304 N. Y. 314, 330.) If the jury found that Cauldwell was a *joint* tort-feasor *in pari delicto* with Brennan, Cauldwell will have no right to indemnity. (*Dolnick* v. *Donner Lumber Corp.* 275 App. Div. 954, 955, and cases therein cited.)

Motion by third-party defendant for summary judgment denied.

Application of Cauldwell (third-party plaintiff) for summary judgment is denied (1) because under the above interpretation of the indemnity agreement, the issue of the *relative* negligence of the parties is a jury question; (2) even, assuming that the contract under consideration should be interpreted as obligating the subcontractor to indemnify the contractor for the latter's negligence, then at least the third affirmative defense (breach of contract) presents an issue of fact.

Submit order before December 27th.