■     LENA THIBAULT, as Committee of the Person and Property of LORETTA SLATER, an Incompetent, as Administratrix of the Estate of BERNARD SLATER, Deceased, Respondent-Appellant, v. CITY OF NEW YORK, Appellant, and OHIO BRASS COMPANY et al., Respondents. CITY OF NEW YORK, Third-Party Plaintiff-Respondent, v. BROADWAY MAINTENANCE CORPORATION et al., Third-Party Defendants-Appellants.— Consolidated action to recover damages for wrongful death against the City of New York, Ohio Brass Company, the vendor of electrical insulators, and The Ohio Brass Company, the manufacturer of said insulators. The city cross-complained against Ohio Brass Company and The Ohio Brass Company and brought a third-party action against the Broadway Maintenance Corporation and Fischbach & Moore, Incorporated, the employers of the intestate, which corporations had a contract with the city. Broadway Maintenance and Fischbach & Moore cross-complained against Ohio Brass Company and The Ohio Brass Company. The intestate died as a result of injuries sustained when he came into contact with, and received an electric shock from, a span wire which was not intended to carry electric current. The jury rendered a verdict in favor of Ohio Brass Company and The Ohio Brass Company against the committee of the intestate's administratrix and in favor of the committee against the city, and the court granted judgment over in favor of the city on its third-party complaint against Broadway Maintenance and Fischbach & Moore and also dismissed all the cross complaints. Broadway Maintenance and Fischbach & Moore appeal, as limited by their brief, from (1) so much of the judgment entered thereon as granted judgment over on the third-party complaint, and (2) so much of an order dated September 5, 1956 as on reargument adhered to the original decision denying their motion *to dismiss the third-party complaint.* The city and the committee appeal from so much of said judgment as is against each of them. Judgment insofar as it is in favor of Ohio Brass Company and The Ohio Brass Company against the committee affirmed, without costs. Judgment insofar as it is in favor of the committee against the City of New York and insofar as it is in favor of the City of New York against the Broadway Maintenance Corporation and Fischbach & Moore, Incorporated, reversed on the law and the facts, without costs and complaint and third-party complaint dismissed. Findings of fact insofar as they may be inconsistent herewith are reversed, and new findings are made as indicated herein. Order dated September 5, 1956 modified by striking from the ordering paragraph everything following the words "upon the re-argument" and by substituting therefor the words "the motion to

dismiss the third-party complaint is granted." As so modified, order insofar as appealed from affirmed, without costs. Appeals from judgment insofar as it is in favor of Ohio Brass Company and The Ohio Brass Company against the City of New York, the Broadway Maintenance Corporation and Fischbach & Moore, Incorporated, dismissed, without costs, as academic. Under a contract with the city, executed February 24, 1948, Broadway Maintenance and Fischbach & Moore, hereinafter jointly referred to as "the contractor", undertook to furnish, install, relocate and place in operation trolley coach overhead and cable equipment, including all necessary span wires and insulators so as to afford operation of trolley coaches along Flushing Avenue, Brooklyn. A new span wire and all of the insulators between pole 131 on the north side and pole 132 on the south side of Flushing Avenue were installed by the contractor. The span wire supported the four wires for the prospective trolley coaches and the two wires for the existent trolley cars. At the time of the accident on August 24, 1949, the work of the contractor at the scene had been virtually completed although the route was not finished and put into operation until November, 1949. Insulators at the junction of the span and trolley wires had been installed by the contractor in the same condition as received from the manufacturer. No test of these hanger insulators or of the span wire was made after installation, and none was contemplated by the contractor. Electricity had flowed through the trolley car lines throughout the year and a half of work by the contractor preceding the accident. Test trolley coaches had been in operation for three or four months. There is no proof that such testing, in part to determine correct alignment of wires, was not in accordance with the contract. All six lines supported by the span wire were in operation at the time of the accident. On the day of the accident, the intestate and a fellow employee were doing work in accordance with a check list furnished to the contractor by the city. As to pole 131 the work consisted of tightening of the pole bolt and touching up of such paint as was marred by the wrench. This was work done under the contract and by the contractor. As provided in the contract, it was contemplated that a city agency would make thorough inspection and call attention of the contractor to all defects or variations from the requirements of the contract, but " The right of inspection by the City herein provided is intended solely for the City's benefit; and the Contractor covenants and warrants that the Equipment furnished and installed hereunder shall be free from patent and latent defects, which the City is not in any manner bound by inspection or otherwise to discover." In addition, the contractor guaranteed all apparatus, devices, workmanship and material for one year after completion and acceptance of the work. While the intestate as employee of the contractor was engaged in the foregoing work to be done under the contract, he reached with one hand inside a strainer insulator at the pole and came into contact with the span wire. Due to a defective hanger insulator the span wire was charged with electricity, and the intestate received the above-mentioned electric shock. The complaint should have been dismissed as to the city as a matter of law. The court posed two questions to the jury as to liability of the city (1) for placement of a strainer insulator too close to the pole, and (2) for lack of care to eliminate the defective hanger insulator. There was no proof warranting liability as to the strainer insulator. The committee's own expert testified that it was not the function of the strainer insulator to protect a worker. It was present as double insurance that electricity would not be conducted from the trolley wire to the earth, and its position as to the pole was in accordance with the objective of preventing trolley poles from striking it. The strainer

insulator was placed in accordance with existing custom in New York City. It was not involved as a proximate cause in any event. Implicit in the verdict is a finding that the sole negligence of the city which constituted a proximate cause was "lack of care to eliminate the hanger insulator which became defective on or after installation". This determination necessarily is predicated on a finding that the city had a duty of inspection as to the intestate. There was not such duty (*Gambella* v. *Johnson & Sons,* 285 App. Div. 580). It was the obligation of the contractor to install the insulator and turn it over to the city free of all defects. The intestate's place of work was one created by the contractor, his employer and constituted part of the work in progress (*Olsommer* v. *Walker & Sons,* 4 A D 2d 424, 433, affd. 4 N Y 2d 793). The city was not obliged to protect the intestate against the negligence of his employer or fellow employees in holding forth, as good, a defective insulator (*Zucchelli* v. *City Constr. Co.* 4 N Y 2d 52). Wenzel, Acting P. J., Murphy and Ughetta, JJ., concur; Beldock and Kleinfeld, JJ., concur in the dismissal of the appeals and in the affirmance of that part of the judgment which is in favor of Ohio Brass Company and The Ohio Brass Company against the committee, but dissent (1) from the modification of the order dated September 5, 1956, and (2) from the reversal of those parts of the judgment which are in favor of the committee against the City of New York and in favor of the City of New York against the Broadway Maintenance Corporation and Fischbach & Moore, Incorporated, and the dismissal of the complaint and third-party complaint, and vote (1) to affirm the order dated September 5, 1956, insofar as appealed from, without modification, and (2) to affirm those parts of the judgment which are in favor of the committee against the City of New York and in favor of said city against the Broadway Maintenance Corporation and Fischbach & Moore, Incorporated, with the following memorandum: Although ordinarily an owner is not responsible for the negligent acts of a contractor and is not obliged to protect employees of his contractor against the negligence of the employer or that of a fellow servant, there is an exception to that rule, namely that the owner is liable if he is guilty of a negligent act, independently of the negligence of the contractor. (*Broderick* v. *Cauldwell-Wingate Co.,* 301 N. Y. 182, 187–188.) Prior to the accident the city, by a check list, had requested the contractor to tighten certain bolts on pole 131. Therefore, the city had notice that employees of the contractor (of whom the intestate was one) would be in the vicinity of the overhead trolley and span wires at the time of the operation. The city was guilty of negligence, independently of any negligence of the contractor, when it chose to send a lethal current of electricity through the trolley wires without making any attempt to inspect for the purpose of determining whether there were any defects in the system which might cause injury to those working in the vicinity. (*Pike* v. *Consolidated Edison Co.,* 303 N. Y. 1.) Our dissent and vote with reference to the third-party action is on the authority of *Jordan* v. *City of New York* (3 A D 2d 507, affd. 5 N Y 2d 723). In our opinion, the indemnity clauses were sufficient to include injuries caused by the city's active negligence.