## (October 18, 1960)

■ JACOB MARKS, Respondent, v. NEW YORK CITY TRANSIT AUTHORITY, Defendant-Appellant, and Third-Party Plaintiff-Respondent. METRO DECORATING Co., Third-Party Defendant-Appellant.

APPEAL by defendant-appellant from a judgment of the Supreme Court in favor of plaintiff, entered June 2, 1959, and amended on August 17, 1959, in New York County, upon a verdict rendered at a Trial Term. Appeal by third-party defendant from that part of said judgment directed in favor of defendant on its cross complaint over against third-party defendant.

*Per Curiam.* On August 26, 1954, the plaintiff, an experienced painter employed by Metro Decorating Co., Inc. (Metro) sustained an injury when he fell from the top of a change booth located on the 59th Street and Lexington Avenue subway station of the New York City Transit Authority (Authority). At the time, plaintiff was using the booth as a means of descent from an area above the booth where he had been painting. Metro was an independent contractor that was painting the subway system pursuant to a contract with the Authority. In this suit, plaintiff recovered a verdict of $60,000 from a jury against the Authority, and the trial court directed judgment in favor of the Authority against Metro on a third-party complaint. The Authority has appealed from so much of the judgment against it; and Metro has appealed from the entire judgment.

The trial court submitted the case to the jury on two theories of liability. Plaintiff claimed that the top of the change booth had dirt and grease on it, and that the Authority was liable by reason of its alleged negligence in the maintenance of the booth. Moreover, plaintiff urged that the Authority be held responsible under sections 200 and 240 of the Labor Law in that it had assumed such control and custody of the painting work that it directed the manner in which the work was to be done as well as what work was to be done. In particular, plaintiff maintained that in descending from the mezzanine, where he had been painting, via the top of the change booth, he was responding to the express directions of the Authority's inspector on the job. The jury was instructed on these two phases of plaintiff's claim. On the Labor Law issue the jury was told that if they should find that the Authority was directing plaintiff in the method of performance of the work, the plaintiff could not recover unless

it was found that in coming down from the area which plaintiff was painting onto the change booth, plaintiff was obeying the orders or instructions of the Authority's inspector rather than his own inclinations or the orders of his own foreman.

On a motion to set aside the verdict, the trial court, although stating that it was impossible to ascertain upon which theory the jury had returned a verdict in favor of plaintiff, nevertheless denied the motion despite a conclusion that there was insufficient evidence of any violation of the pertinent sections of the Labor Law. We agree that any verdict based on plaintiff's claim that the Authority's inspector told plaintiff to come down from the mezzanine was against the weight of the credible evidence. (See *Politi* v. *Irvmar Realty Corp.*, 7 A D 2d 414.) Although this palpable attempt to come within the ambit of *Broderick* v. *Cauldwell-Wingate Co.* (301 N. Y. 182) taxes credulity, it may not be dismissed as incredible as a matter of law. Hence, whether the inspector gave directions, and if such directions were given, whether plaintiff heeded them or was bound to follow them, must remain questions of fact for the jury.

On the appeal by Metro from the judgment on the third-party complaint, we find that the indemnity agreement, upon which the Authority relied, falls short of manifesting a clear and unequivocal intent to protect the Authority against the consequences of its own negligence. (*Jordan* v. *City of New York*, 3 A D 2d 507, affd. 5 N Y 2d 723.) While there are similarities in the agreement in *Jordan* and that in the instant case, there is absent the all-embracing language in *Jordan* upon which the intent to indemnify against the negligence of the city was spelled out.

The judgment against the Authority should be reversed on the law and the facts and a new trial granted, with costs to the appellant Authority. The judgment on the third-party complaint should be reversed on the law, and the third-party complaint dismissed, with costs to appellant Metro.

EAGER, J. (dissenting). I concur in reversal of the judgment in favor of plaintiff, but dissent insofar as the court would grant plaintiff a new trial. I vote to dismiss the complaint, and consequently also to dismiss the third-party complaint.

The plaintiff did not establish a case either under the provisions of section 200 or section 240 of the Labor Law, nor on the theory of common-law negligence.

The trial court concluded that there was no basis here for the submission of this case to the jury on theory of negligence in violation by defendant New York City Transit Authority of section 200 of the Labor Law; and it is clear that the plaintiff did not establish any such violation by the said defendant. I think we are all agreed that a case calling for the application of said section 200 was not made out. This, because, the general rule is that an owner does not breach his duty when the place in which an independent contractor's employee is injured is neither a place of work provided by the owner nor a way of approach thereto. (See *Italiano* v. *Jeffrey Garden Apts.*, 3 A D 2d 677, 678 [citing cases], affd. 3 N Y 2d 977.) Here, the top of the subway change booth was not a "place to work" in any sense of the term, nor was it a way provided by the defendant New York City Transit Authority for approach to or descent from the mezzanine where the plaintiff had been assigned to work by his boss, the foreman of the independent painting contractor. The top of the change booth was, at the time of the accident, being used by the plaintiff for a purpose for which it was never intended, and applicable is the general rule that an owner's duty to furnish a safe place to work is not breached when a contractor's employee puts a common structural object to an unintended or unusual usage. (See *Marshall* v. *City of New York*, 308 N. Y. 836; *Italiano* v. *Jeffrey Garden Apts.*, *supra*, p. 678.)

It is clear also that the plaintiff did not present evidence sufficient to show a violation by the defendant Transit Authority of section 240 of the Labor Law. Assuming that the plaintiff did show a failure to furnish proper scaffolding, ladders, etc., for him in his painting work and for a way down from his work, as required by said section, the question would be — is there any evidence tending to show a violation by said defendant of a responsibility in this connection. Under the provisions of the section, its responsibility depended upon whether or not it was a " person employing or directing another to perform labor of any kind in the * * * painting ". The question is, therefore, was the said defendant employing or directing plaintiff in the performance of his labors.

Now, said section 240 is generally construed to place the duty of furnishing the mentioned devices (scaffolding, ladders, etc.) on the immediate employers of the labor, and this would mean the independent contractor when he is in charge of performance. It would not mean an owner where he himself was not actually doing the work. (See *Komar* v. *Dun & Bradstreet Co.,* 284 App. Div. 538, 541 [CALLAHAN, J.] [citing cases].) Of course, in a particular case, an owner who is not an employer, may assume such control of the work in progress as to be held to be the person " directing " an employee in his labors in a manner to be responsible for the furnishing of proper scaffolding, ladders, etc.

To render section 240 applicable to require the owner to furnish proper scaffolding, ladders, etc., for an independent contractor's employees, the " directing " by the owner must be of the employees of the contractor in the performance of their work. Clearly, the mere supervision by the owner of the work of an independent contractor, without having control over the labor, and his directions from time to time incidental to his supervision, are not to be held to make him responsible for the furnishing of scaffolding, ladders, etc., for use by the contractor's employees.

The evidence here is conclusively to the effect that direction and control of the work itself was with the plaintiff's employer, the independent painting contractor, and that its foreman, having full authority over the plaintiff, was present and in charge of the plaintiff at the time of the accident. Concededly, the defendant Transit Authority did retain a limited power of supervision, including the power to designate where the work was to be done from day to day and to see to it that the work was carried out in accordance with the specifications, but the retention of such power and the giving of directions pursuant thereto did not place it in such control of the employees of the contractor as to be considered to be " directing " them " to perform labor " within the meaning of section 240. (See *Blackwood* v. *Chemical Corn Exch. Bank,* 4 A D 656; *Benning* v. *City of New York,* 279 App. Div. 769; *Politi* v. *Irvmar Realty Corp.,* 7 A D 2d 414; *Mendes* v. *Caristo Constr. Corp.,* 5 A D 2d 268.) In fact, the trial court here so held in its opinion in denying a motion to set aside the plaintiff's verdict.

Finally, it is concluded that the plaintiff failed to present any evidence sufficient to go to the jury on the theory of common-law negligence of the defendant Transit Authority. There was evidence to the effect that the top of the subway change booth from which plaintiff fell was greasy and slippery to the knowledge of the defendant, but such evidence in and of itself did not make out a case. This, because, clearly, as heretofore pointed out, the top of the booth was never intended to be used as a way or place to work for painters or other workmen; and, therefore, the defendant may not be cast in liability merely upon proof of its dangerous condition and notice thereof.

Nor did the plaintiff make out a case coming within the ambit of *Broderick* v. *Cauldwell-Wingate Co.* (301 N. Y. 182, and similar cases). In the *Broderick* case, the plaintiff's boss or superior was not present as the plaintiff was working and moving out on a deck, and the plaintiff claimed that he asked Paterno,

the superintendent of defendant (a general contractor), if he was going to put any shores underneath a certain support for the deck and that the superintendent replied, " There are no shores going in there. Go ahead. It is all right." Whereupon, plaintiff moved out on the deck and it collapsed, causing injuries to plaintiff. The Court of Appeals said, " Taking up the issue of negligence, however, we are of the view that the evidence of the conversation had with Paterno relative to proceeding without supports of any kind might well, to a jury, have constituted an assurance of safety * * * and, even more important, an assumption of *direct control* over the particular work in progress" (pp. 187–188). It is to be noted specifically that the court also said (p. 188) that implicit in the verdict for the plaintiff against the general contractor was the finding " that defendant's employee was negligent in giving plaintiff a direction to work under *an assurance of safety* when he knew or should have known that a dangerous condition existed; and that the plaintiff, *in reliance thereon,* was free from contributory negligence." (Italics added by undersigned for purposes of emphasis.)

Now, under the *Broderick* case and similar cases where an employee of a third party was allowed a recovery against an owner or general contractor on account of a direction from the owner or contractor to proceed in a certain way, it appeared either (1) that the injured had acted on an express or implied assurance of safety, relied upon by him (that is, recovery was allowed on the theory of the *negligently giving of an assurance of safety*); or (2) that the injured had acted as he did because the owner or general contractor had assumed such direct control over the particular work in progress that the injured felt under compulsion to follow the direction of the owner or general contractor (that is, a recovery was allowed on the theory of *the negligently giving of a command to one who would be expected to and did follow it as an order*).

Certainly, it could not be found on the evidence here that the plaintiff relied upon the direction of defendant's inspector as an assurance of safety. This, because plaintiff himself knew that the top of the change booth was covered with dirt and grease. He testified he observed this condition a short time prior to the accident. Knowing full well the condition, and there being nothing obscure or hidden about it, it cannot be found that he considered the directions of the inspector an assurance that there were no dangers.

Nor can a verdict for plaintiff be sustained on the theory that the defendant's inspector had assumed such direct control over the particular work in progress that plaintiff took the direction of the inspector as a command which he felt bound to and did follow as an order. As heretofore pointed out, it is clear, as a matter of law, that the defendant was not in such control of the plaintiff in the performance of his work that it may be held that he would take and follow as an order the defendant's directions. He would listen to the inspector in connection with the manner of his work and place of work, but clearly the control of his actions was with his foreman, particularly where, as here, the foreman was present.

Under the circumstances here, it is clear that the plaintiff took the way down that he did and fell, not because he was following the direction of the inspector as an order, but because he was bound to and did follow the express command of his foreman who concededly had charge and control of plaintiff, and who expressly told the plaintiff to take the particular way down. Under these circumstances, any alleged negligence in the direction of the inspector was not a proximate cause for plaintiff's actions resulting in his injuries, in that the plaintiff must be considered bound to follow and to be following the direction of his boss.

Breitel, Rabin and Valente, JJ., concur in *Per Curiam* opinion; Eager, J., dissents in part and votes to dismiss the complaint in a dissenting in part opinion, in which Botein, P. J., concurs.

Judgment, so far as appealed from, in favor of plaintiff-respondent and against defendant-appellant, New York City Transit Authority, reversed, upon the law and upon the facts, and a new trial ordered, with costs to the defendant-appellant. Judgment in favor of the defendant and third-party plaintiff-respondent, New York City Transit Authority, against the third-party defendant-appellant, Metro Decorating Co., Inc., on the cross complaint in the third-party action, reversed, upon the law, and judgment rendered in favor of the third-party defendant-appellant and against the defendant and third-party plaintiff-respondent dismissing the cross complaint on the merits, with costs, and the third-party defendant-appellant recover of the defendant and third-party plaintiff-respondent the costs of this appeal. [17 Misc 2d 583.]