**John A. PERSSON, Jr., Plaintiff-Appellee,**

v.

**The M. W. KELLOGG COMPANY,**
**Defendant-Appellant.**

**No. 19, Docket 28047.**

United States Court of Appeals
Second Circuit.

Argued Oct. 2, 1963.

Decided Oct. 17, 1963.

**432**

Nathan Greenberg, New York City (Itkin, Roberts & Greenbaum, New York City, on the brief), for plaintiff-appellee.

Patrick E. Gibbons, New York City (Urban S. Mulvehill, Terhune, Gibbons & Mulvehill, New York City, on the brief), for defendant-appellant.

Before LUMBARD, Chief Judge, and FRIENDLY and SMITH, Circuit Judges.

PER CURIAM.

John A. Persson, Jr., the appellee, was employed as a rigger by Continental Copper & Steel Industries at its graving dock in South Portland, Maine. Persson was injured when a pipe running along a craneway, to which he had rigged a hanging scaffold on which he was standing, pulled away from its brackets and precipitated him to the dock below.

Continental had contracted with the M. W. Kellogg Company, the appellant, to furnish tools and equipment required by Continental to erect a tower, and two field superintendents whose responsibilities were to supervise the assembly and use of Kellogg's equipment and give advice to Continental's crews. The two superintendents were Kellogg's only employees at the job site.

Anderson, a Continental employee and Persson's immediate superior, had been directed to rig the scaffold to the pipe by Crookshanks, one of Kellogg's field superintendents. Cookson, a Continental foreman, had asked Anderson to enlist Persson's aid in the rigging operation.

The jury returned a verdict in favor of Persson in the sum of $55,000. After entry of judgment in that amount, Judge Croake denied a motion by Kellogg for judgment notwithstanding the verdict and from this judgment and denial of the motion Kellogg appeals.

The trial court, with the acquiescence of the parties, applied the law of New York.[1] In Broderick v. Cauldwell-Wingate Co., 301 N.Y. 182, 93 N.E.2d 629 (1950), the New York Court of Appeals held that while a general contractor who has the power of general supervision may not be held liable for the negligent actions of subcontractors, this common law rule will yield "when the general contractor, by his act or conduct, assumes control and gives specific instructions which necessarily involve the safety of the subcontractors' men." Subsequent New York cases have adhered to this rule. See, e. g., Matuszak v. City of New York, 8 A.D.2d 976, 190 N.Y.S.2d 776 (1959); Politi v. Irvmar Realty Corp., 7 A.D.2d 414, 183 N.Y.S.2d 748 (1959).

In its charge to the jury the trial court made it abundantly clear that liability could be predicated only upon a finding that Kellogg, through its superintendent Crookshanks, had assumed direct supervision and control of the rigging operation in which Persson was engaged. There was ample evidence to warrant submission of the case to the

---

1. As the parties are of diverse citizenship, New York choice-of-law principles should have governed the conduct of the litigation below. Klaxon Co. v. Stentor Manufacturing Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). New York would apply the law of Maine, where the alleged tort occurred. Conklin v. Canadian-Colonial Airways, 266 N.Y. 244, 194 N.E. 692 (1933). However, the parties cited New York law, rather than Maine law, apparently because there are no Maine statutes or decisions on the question at issue. In any event, the parties were content to have the district court apply New York law. See Gediman v. Anheuser-Busch, Inc., 299 F.2d 537, 544 n. 6 (2 Cir. 1962).

jury on this theory. Although in Broderick the defendant's superintendent had given instructions directly to the plaintiff, the fact that Crookshanks did not deal directly with Persson is of no import, since Anderson testified that Crookshanks had specifically instructed him to rig the scaffold to the pipe.

The judgment of the district court is affirmed.