■ LAWRENCE F. BELT, Respondent, v. PORT OF NEW YORK AUTHORITY, Appellant-Respondent, and W. J. BARNEY CORPORATION, Appellant, et al., Defendants. PORT OF NEW YORK AUTHORITY, Third-Party Plaintiff-Appellant, v. BROADWAY MAINTENANCE CORP., Defendant-Respondent. W. J. BARNEY CORPORATION, Third-Party Plaintiff-Respondent, v. BROADWAY MAINTENANCE CORP., Third-Party Defendant-Appellant.— In an action by an employee of a subcontractor (Broadway Maintenance Corp.), to recover damages for personal injuries from the owner of a pier on which construction work was being performed (The Port of New York Authority), from the alleged general contractors (Felhaber Corporation and W. J. Barney Corp.), and from a subcontractor (Munder Sobel Kraus Corp.), in which, *inter alia*: (1) the Authority asserted a cross claim for recovery over against W. J. Barney Corp. on the basis of contractual indemnity provisions in its contract with the latter; (2) the Authority instituted a third-party action for recovery over against Broadway Maintenance Corp. on the theory of common-law indemnity for a passive wrongdoer; and (3) W. J. Barney Corp. instituted a third-party action for recovery over against Broadway Maintenance Corp. on the theory of common-law indemnity for a passive wrongdoer and on the basis of contractual indemnity provisions, the parties appeal from an order and resettled judgment of the Supreme Court, Kings County, entered April 21, 1965 and from an order

and second resettled judgment of said court, entered July 2, 1965, as follows: (1) The Authority appeals, as limited by its brief, from so much of said order and resettled judgment and from said order and second resettled judgment as is in favor of the plaintiff against it; (2) Broadway Maintenance Corp. appeals, as limited by its brief, from so much of said order and resettled judgment and said order and second resettled judgment as grants judgment over against it to W. J. Barney Corp.; (3) W. J. Barney Corp. appeals from said order and resettled judgment and from said order and second resettled judgment, except from that portion thereof which adjudges that it have judgment over against Broadway Maintenance Corp. and it appeals therefrom insofar as the court disallowed it the sum of $845, representing a proportionate share of the stenographic minutes. At the beginning of the trial, the plaintiff discontinued his action against Felhaber Corporation and Munder Sobel Kraus Corporation, with prejudice; and, on the plaintiff's opening to the jury, the complaint against W. J. Barney Corp. was dismissed with prejudice. The second resettled judgment dismissed the plaintiff's complaint against said three defendants, with prejudice. The judgments were entered upon a jury verdict of $150,000 in favor of plaintiff against the Authority and a determination by the Trial Judge to whom the issues raised by the cross claim and the third-party actions had been submitted pursuant to stipulation. Appeals from order and resettled judgment entered April 21, 1965 dismissed. It was superseded by the order and second resettled judgment entered July 2, 1965. Order and second resettled judgment entered July 2, 1965 reversed, insofar as appealed from, on the facts; actions severed: (1) as between plaintiff and defendant Port of New York Authority in the main action; (2) as between said defendant and its co-defendant W. J. Barney Corp. on the cross claim against the latter in said action; and (3) as between said W. J. Barney Corp. and Broadway Maintenance Corp. in its third-party action against the latter; and a new trial ordered as to said parties, with costs to abide the event, unless, within 30 days after entry of the order hereon, plaintiff shall serve and file a written stipulation consenting to reduce from $150,000 to $75,000 the amount of the verdict in his favor and to modification of the judgment accordingly, in which event the judgment, as so reduced and modified and as accordingly reduced and modified with regard to the judgments over in favor of The Port of New York Authority against W. J. Barney Corporation and in favor of W. J. Barney Corporation against Broadway Maintenance Corp. and insofar as appealed from is affirmed, without costs. In our opinion, the verdict in favor of plaintiff was excessive to the extent indicated. Findings of fact by the court and implicit in the verdict are affirmed (cf. *General Elec. Co.* v. *Hatzel & Buehler,* 19 A D 2d 40, affd. 14 N Y 2d 639), except with regard to the amount of the verdict. Christ, Acting P. J., Brennan, Hill and Rabin, JJ., concur; Benjamin, J., concurs in dismissal of the order and resettled judgment of April 21, 1965, but dissents and votes to reverse the order and second resettled judgment and to dismiss the complaint against defendant the Port of New York Authority, and to dismiss, as academic, the cross claim of defendant Port of New York Authority against W. J. Barney Corp. and the third-party complaint of W. J. Barney Corp. against Broadway Maintenance Corp., with the following memorandum: In my opinion, plaintiff did not establish liability on the part of defendant Port of New York Authority (hereafter called "Authority"). Plaintiff was an electrical worker employed by Broadway Maintenance Corp. (hereafter called "Broadway"). Broadway was engaged by W. J. Barney Corp. (hereafter called "Barney") to do the electrical work on the construction of a shed on Pier 11, Brooklyn, which Barney was building for Authority, the owner of that pier. On the day of the accident, plaintiff was

working with fellow employees of Broadway on the installation of equipment for a number of electric lights on the exterior of the shed. The work involved the pulling of wires through a 300-foot metal pipe, which was attached to the outside of the shed, about 18 feet above the ground. As the wire was being pulled through the pipe, it became caught. Plaintiff mounted an extension ladder and, using a screw driver, freed the caught wire. Plaintiff's fellow workers then pulled the wire. As they did so, the metal pipe came off the wall, fell against plaintiff, and knocked him and the ladder backwards. Plaintiff landed on his feet, sustaining a fracture of the heel bone. All of plaintiff's tools, equipment and material were furnished by Broadway, his employer. All of his orders and instructions came from foremen employed by Broadway. The metal pipe that came loose and struck him had been attached to the shed by Broadway. That pipe had been secured to the wall by a number of iron straps, each held in place only by two 1¼ inch screws that extended about ½ inch beyond the back of the thin wall, which was of aluminum only ⅓ of an inch thick; there were no bolts or washers on the screws behind the wall to hold them fast and keep them from slipping out; and there was no backing or stud behind the aluminum wall into which the screws would bite. There was expert testimony that it was customary to secure such screws by using a stud or backing behind the aluminum wall, or alternatively to use bolts secured with washers and nuts instead of screws. It apparently was the improper, inadequate and unusual method of attachment used by Broadway that permitted the metal pipe to come loose and to strike plaintiff. The theory of plaintiff's case against Authority was that it had assumed direct control of the work, and specifically the manner in which the metal pipe had been attached to the wall. In my opinion, the proof does not support such theory. The contract between Authority (the owner) and Barney (the general contractor) gave Authority's chief engineer absolute authority "to determine what is or is not necessary or proper" for the doing of the work; it gave him power to inspect all details of the work and it made him the judge of the suitability of the work, materials and construction methods; and it required the contractor to redo any work not meeting the engineer's approval. Authority's plans, specifications and blueprints for this job contained no information as to how the metal pipe was to be affixed to the thin aluminum wall. The only proof purporting to show an assumption of direct control by Authority came from one Beck (Broadway's foreman) and one Dattilo (an electrical inspector employed by Authority). Beck testified that he generally consulted with Dattilo before he did any work, and outlined how he was going to do it; that when they agreed, he did the work; that in this way he avoided having to redo the work if it did not meet with Dattilo's approval; that before he attached the metal pipe to the wall, he told Dattilo that he intended to attach it with the 1¼ inch screws; that he attached it that way after he had spoken to Dattilo about it; and that he (Beck) was the one who had decided to use these screws to attach the pipe to the wall. Dattilo testified that Beck had spoken to him about his intention of fastening the pipe to the wall with straps and screws; and that he (Dattilo) had "said it was okay, and it sounded all right, and [he] told him to 'go ahead and try it.'" In my opinion, such proof is woefully inadequate to establish an assumption of direct, affirmative control by Authority over this phase of the work. Nowhere in the conversation between Beck and Dattilo was there any *order or affirmative direction* by Dattilo to attach the pipe in the manner actually used by Beck; nowhere in that conversation was there any indication that Dattilo knew or should have known that Broadway would not use the customary studs or backing behind the aluminum wall, or bolts with washers and nuts, so that the pipe would be attached in the

customary secure manner. Remembering Beck's testimony that the use of this method of attachment was *his* idea, not Dattilo's, that conversation establishes at most an abdication of control by Authority, or a passive neglect by it to exercise a right of control, and that clearly is insufficient to impose liability on it for this accident. Absent a direct affirmative assumption of control over the work involved in this accident, Authority is not liable to plaintiff for the affirmative negligence of an independent subcontractor (*Broderick* v. *Cauldwell-Wingate Co.*, 301 N. Y. 182; *Employers Mut. Liab. Ins. Co.* v. *Di Cesare & Monaco Concrete Constr. Corp.*, 9 A D 2d 379).