Joseph Life, J.
Plaintiff seeks to recover damages for a serious injury which he sustained in the course of his employment on a high-powered printing machine^ He sues the defendant manufacturer of the machine. He was aware of the risk he took which resulted disastrously for him. The trial was on liability alone and the issues were submitted to the jury on theories of negligence and breach of warranty.
' Relying on Codling v. Paglia (38 A D 2d 154), the court told the jury that contributory negligence was a defense to the action founded in negligence but not where the claim was one of breach of warranty. The jury’s verdict was for the defendant on the first cause and for the plaintiff on the second. Implicit in the verdict was a finding of contributory negligence.
Thereafter defendant moved to set aside the verdict for the plaintiff , and for a directed verdict in its favor. While that application, was being considered, the decision of the Court of Appeals (now reported at 32 N Y 2d 330) reversing the Appellate Division’s decision in Codling v. Paglia was published in the New York Law Journal (May 24, 1973, p. 1, col. 7). The Court of Appeals said (p. 343) that “ contributory fault of the plaintiff is a defense to an action for strict products liability ”, In a memorandum dated May 25, 1973, I granted defendant’s motion to set aside the verdict for plaintiff on the breach of warranty but denied the request for a directed judgment for the defendant- and. ordered a new trial. In the course of the memorandum I said that there remained a question whether plaintiff had unreasonably accepted the risk or whether it was required by his employment. I quoted from the case of Luque v. McLean (8 Cal. 3d 136) to the effect that ordinary contributory negligence would not defeat plaintiff in a strict liability action but it would be required to show that he had “voluntarily and unreasonably ” proceeded to. encounter a known danger, 'that is to assume the risk. I made other remarks in the memorandum to support my conclusion that a new trial should be had. I have not altered that view and, therefore, the instant motion is denied. However, I now set aside the entire verdict and direct a new trial on all questions in the interest of justice *527 and I shall set forth some further thoughts which I hope will support my conclusion.
The fact pattern in the Codling case was quite different from the one here. In Codling the machine was an automobile operated by Paglia which suddenly veered from its .path of travel and into oncoming traffic to injure the plaintiffs, Mr. and Mrs. Frank Codling. The defect in the automobile was of a latent nature. In this case, the plaintiff was an employee who was using a machine in a manner which was customary and under pressure of retaining his job. He engaged in a dangerous but accepted practice in his trade. His superior on the press, urged him to be careful, but made no effort to dissuade him from his course. Had plaintiff deviated from customary practice and halted the press, the testimony was that it could have been costly to the employer, and might have cost plaintiff the loss of employment.
If we were to apply the test given to us by the court in Codling (32 N Y 2d 330, 342, supra), the plaintiff’s complaint would have to be dismissed because he knew “ the defect and perceived its danger ”. However, the rule may be different in the context of the case here for “ It is not in every case where the danger is foreseen by the plaintiff that we hold the defendant free from liability,” and the plaintiff “ may be barred from recovery only upon a showing that his act was an unreasonable one (see James, Assumption of Risk, 61 Yale L. J. 141 [1952]).” These conclusions were made by the late Mr. Justice Benjamin Rabin in his dissent in Verduce v. Board of Higher Educ. in City of N. Y. (9 A D 2d 214, 218-219). He said also (p. 219) “ In this type of case we often find two factors which permit us to sustain liability despite the actor’s knowledge of possible danger; the first a direction by.a superior to do the act and second, an economic compulsion or other circumstance which equally impels him to follow the direction.” Verduce was an action in which a young woman aspiring to be an opera star followed the instructions of a director (not a fellow employee) and suffered an injury. The decision of the Appellate Division was reversed (8 N Y 2d 928) for the reasons stated in the dissent.
In another action, an employee of a subcontractor sued the general contractor to recover damages which he said resulted from the faulty directions of the general contractor’s superintendent. The Court of Appeals reversing the Appellate Division’s dismissal of the complaint said that the plaintiff relying on the superintendent’s instruction was free from contributory negligence because “ when a person in the capacity of a superior *528 assumes control over a workman on a job and directs Mm to proceed under circumstances recognizable as dangerous, the subordinate workman has little, if any, choice in the matter but to obey it and, if he stays within the limits of the superior’s instructions and is injured, he may not be penalized by a claim of contributory negligence as a matter of law.” (Broderick v. Couldwell-Wingate Co., 301 N. Y. 182, 188).
Other jurisdictions have taken similar views. In Walsh v. Miehle-Goss-Dexter, Inc. (378 F. 2d 409, 414) it was held that although -following a customary practice and usage would not necessarily excuse an injured workman for his contributory negligence it is still relevant and material on the question and an issue for the jury to determine. In Walsh the court (p. 414) cited with approval the language of the Supreme Court of Pennsylvania that if the workman in performing Ms work conforms to ordinary usage, it is evidence of the exercise of due care and suggests a lack of carelessness, and also said that ultimately what must be determined is whether the workman exercised a degree of care commensurate with the risks incident to his work and the obligation of his job.
In Boerio v. Haiss Motor Trucking Co. (7 A D 2d 228), the plaintiff and three fellow employees were working on a defective machine which had been furnished by the defendant. The foreman instructed him to continue working on the machine which had been discovered to be defective and dangerous. The court (p. 231) cited the Broderick case (301 N. Y. 182, supra) and said that the decision would be no different because it was the plaintiff’s fellow employee who gave him the direction to continue and the court (p. 232) would not permit the defendant to ‘ ‘ escape from its own liability ’ ’ for negligence because a fellow employee had given the instruction. The court said (p. 232) that plaintiff might still have been guilty of contributory negligence but that his conduct would have to have been that of “ a reasonably prudent person under the factual circumstances surrounding an occurrence. One may not, even under an order issued by another, act with reckless disregard of his own safety. Wanton or deliberate exposure to an obvious hazard, in utter disregard of reasonable prudence, cannot be justified by mere obedience to an order or an assurance of safety given by another.”
It seems to us that the fact pattern of Boerio is very similar to ours. In this trial there was substantial evidence to the effect that the defendant knew that the machine would be used in a *529 hazardous manner and it failed to take steps to correct obvious and dangerous defects in the machine.
Finally, it may be that the charge was confusing to the jury and it was delivered before the decision of the Court of Appeals in Codling was known to us. For these reasons and in the interest of justice plaintiff should have an opportunity to present his claim at a new trial.