CATHERINE PORTER, as Administratrix of the Estate of GARY PORTER, Deceased, Appellant, v AVLIS CONTRACTING CORP., Defendant and Third-Party Plaintiff-Respondent. MODERN MASONRY, INC., Respondent; A. D. HERMAN CONSTRUCTION Co., INC., Third-Party Defendant and Fourth-Party Plaintiff-Respondent, et al., Fourth-Party Defendants.

Second Department, May 9, 1977

*Melvin Sacks (Harold M. Harkavy* of counsel), for appellant.

*Mulholland, Minion & Roe (John F. Mulholland* of counsel; *Michael J. Roe* on the brief), for Avlis Contracting Corp., defendant and third-party plaintiff-respondent.

*Curtis, Hart & Zaklukiewicz (Edward J. Hart* of counsel), for Modern Masonry, Inc., respondent.

*Jarvis, Pilz, Buckley & Treacy (George F. Mackey* of counsel), for third-party defendant and fourth-party plaintiff-respondent.

TITONE, J. This action, *inter alia,* seeking damages for the wrongful death of plaintiff's intestate, arose out of the collapse, on October 6, 1971, of a prefabricated, one-story building then under construction in Chester, New York. The plaintiff, as administratrix of the decedent's estate, sued the general contractor, Avlis Contracting Corp. (Avlis), and Modern Masonry, Inc. (Modern Masonry), the subcontractor of the concrete and masonry work. She alleged, *inter alia,* that the defendants failed to provide the decedent with a safe place to work, to use proper anchor bolts, to properly anchor and secure upright columns, etc.

The component parts of the building were manufactured by one of the fourth-party defendants, Varco-Pruden, Inc. (Varco). As mentioned above, Avlis subcontracted the concrete and

masonry work to its codefendant Modern Masonry. The erection of the steel structure was subcontracted by Avlis to the third-party defendant A. D. Herman Construction Co., Inc. (Herman), which, in turn, contracted with another fourth-party defendant, Modular Steel Systems, Inc. (Modular) for the performance of this work. The plaintiff's intestate, Gary Porter, was employed by Modular as an iron worker.

John Compton, a foreman on the job, testified for the plaintiff that, at approximately 1:20 P.M. on the day of the accident, while the decedent, Porter, was tightening bolts on the structure with an electric impact wrench about 30 or 40 feet above the ground, the sky became cloudy and rain seemed imminent. Consequently, Porter dropped his impact wrench and told Compton to unplug it because he was "getting off the iron". Shortly thereafter, and before Porter could reach the ground, a gust of wind hit the structure, causing it to collapse. However, testimony was also adduced from the defendant contractor's vice-president, John Da Silva, that he left the job about an hour before the collapse, because it had started to rain. Da Silva also testified that a high wind came in as he drove from the site. He estimated that he had been driving anywhere from 20 minutes to half an hour before the building collapsed. Another witness called by the contractor, Conrad B. Gossett, a meteorologist, testified that records from the weather stations in the area revealed that there had been a thunderstorm between 1 and 2 P.M. on the day of the accident, with wind gusts ranging from 30 to 40 miles and hour.

After the trial, the jury found that three of the proximate causes of the collapse of the building were the insufficiency of the guy or supporting wires, the widening of the holes in the base plate of the columns to receive the couplings, and the failure of Modular to follow proper erection practices in the construction of the building. It also found, by a five to one verdict, that the decedent had been contributorily negligent, thus absolving both of the defendants of liability under common-law negligence. However, it returned a verdict of $300,000 in favor of the plaintiff on her claim that the general contractor, Avlis, had violated its statutory duty to the decedent by failing to furnish him safe scaffolding or other devices for his protection pursuant to subdivision 1 of section 240 of the Labor Law. Contributory negligence is not a defense to such a violation.

Subsequent to the rendition of the verdict, the trial court

granted motions by Avlis and Herman to set aside the verdict and dismiss the complaint. It was of the opinion that guy wires were not "braces" or "other devices" within the contemplation of section 240 of the Labor Law and, therefore, that the insufficiency of the guy wires did not constitute a violation of the statute by reason of which liability could be imposed upon Avlis. It further held that since the jury had found the decedent guilty of contributory negligence, liability against Avlis could not be sustained on the basis of its negligence in widening the base plate holes.

On this appeal the plaintiff contends, *inter alia,* (1) that no proof was adduced to justify the finding of contributory negligence on the part of the decedent and that it was error to submit that issue to the jury, and (2) that the finding by the jury that a proximate cause of the building's collapse was the insufficiency of the guy wires necessitated a conclusion that Avlis, as general contractor, violated the afore-mentioned section of the Labor Law. We agree with both of the plaintiff's contentions. We also believe that, even if a charge on contributory negligence was warranted, the one given by the trial court was not sufficient under the circumstances of this case.

### CONTRIBUTORY NEGLIGENCE

The third-party defendant Herman justifies the submission of a contributory negligence charge to the jury on two grounds. First, it argues that, in the light of the condition of the structure and the absence of safety and erection devices such as guy wires and sag rods, the decedent may have been negligent in even getting up on the steel. Second, Herman points out that, according to Da Silva's testimony, the decedent may also have been negligent in remaining on the building to work for a period of time after the rainstorm and winds reached the construction site.

The difficulty with the stance taken by Herman is that at no time during the trial was any effort made to show that the decedent contributed to the conditions which brought about the collapse of the building, i.e., the insufficiency of guy wires and the widening of the base plate holes, or that he failed to use reasonable care for his own safety. No proof was submitted that decedent possessed knowledge sufficient to realize the hazards caused by the insufficiency of guy wires, the widening of the holes in the base plate of the columns and the failure of Modular to follow proper erection practices. Furthermore,

assuming that he had remained "on the iron" for a period of time after the storm reached the area, no testimony was adduced that he knew or should have known that the structure itself could not withstand a wind gust of 30 to 40 miles an hour.

Moreover, knowledge of a defect or dangerous condition does not necessarily establish contributory negligence or assumption of a risk (see *Kaplan v 48th Ave. Corp.,* 267 App Div 272). Assuming evidence was adduced demonstrating that the decedent knew and appreciated that the condition was dangerous, but nevertheless continued to carry on his duties as an iron worker, the general charge as to contributory negligence given by the trial court was insufficient under the circumstances. Since the decedent was carrying out his assigned duties at the time, it may be inferred that he was acting within the confines of his superior's instructions (cf. *Broderick v Cauldwell-Wingate Co.,* 301 NY 182). Thus, any charge as to contributory negligence should have also included the admonition that, assuming the decedent knew and fully appreciated that a dangerous condition existed and that he nevertheless continued working pursuant to express or implied directions of his superior, then it was for the jury to decide whether it was reasonable under all of the circumstances for him to have complied with those directions (cf. *Broderick v Cauldwell-Wingate Co., supra; Kaplan v 48th Ave. Corp., supra; Culver v Gloo,* 27 AD2d 698; *Adler v Shell Transp. Corp.,* 26 AD2d 625; *Hefele v City of New York,* 25 AD2d 142; PJI 2:55).

It should also be noted that, in submitting the issue of contributory negligence to the jury, the trial court erred by failing to make reference to any state of facts upon which such a finding could be made. A charge should incorporate the factual contentions of the parties in respect of the legal principles charged *(Arroyo v Judena Taxi,* 20 AD2d 888, 889; *O'Connor v 595 Realty Assoc.,* 23 AD2d 69, 74, app dsmd 17 NY2d 493). In negligence actions, mere abstract rules applicable to any negligence case, or mere statements as to the law of negligence in general terms, should not be given unless made applicable to the issues in the case at bar *(Green v Downs,* 27 NY2d 205, 208).

### APPLICABILITY OF SUBDIVISION 1 OF SECTION 240
#### OF THE LABOR LAW

During the course of the construction, guy wires were used

for the purpose of holding the structure or frame in place until such time as it was permanently secured or anchored by bolting the parts, or by some other method of permanent attachment. The jury concluded that the insufficiency of such wires was one of the proximate causes of the collapse of the building. At issue herein is whether such a wire, under the circumstances of this case, comes within the purview of subdivision 1 of section 240 of the Labor Law, which provides: "All contractors and owners and their agents, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, *stays,* ladders, slings, hangers, blocks, pulleys, *braces,* irons, ropes, and *other devices* which shall be so constructed, placed and operated as to give proper protection to a person so employed" (emphasis supplied).

In determining that guy wires holding the structure together during construction were neither "braces", "stays", nor "other devices", within the contemplation of the afore-quoted statute, the trial court opined that their use was a detail of Modular's work as a subcontractor and that their insufficiency was merely one of the several departures by Modular from proper construction practices. Such interpretation is much too narrow in scope.

Obviously, the purpose of using guy wires to hold the structure together during construction was not merely to await permanent bolting, but also to enable employees such as the decedent to carry on with their work during the interim, free from the danger that the structure might fall on them. Admittedly, the wires were designed to hold component parts of the structure together. However, it is likewise evident that iron workers, such as the decedent, were expected to perform their duties "on the iron" in furtherance of the over-all work program. The record is bereft of any evidence as to what kind of devices could have been attached to the structure in this instance in order to protect the decedent and others. Indeed, any devices attached for that purpose would have been useless since they would have wound up in the mass of metal lying on the ground after the frame had been disassembled.

Thus, since the contractor, Avlis, elected to have workers stand on the steel frame during work operations, it is logical to conclude that the guy wires were being used, *inter alia,* as a "brace" or "stay" for the workers' "proper protection"

within the purview of subdivision 1 of section 240 of the Labor Law (cf. *Rocha v State of New York,* 77 Misc 2d 290, affd 45 AD2d 633, mot for lv to app den 36 NY2d 642).

In view of the above determination we find it unnecessary to reach any of the other points raised by the plaintiff in her brief. Accordingly, the portion of the judgment which is in favor of defendant and third-party plaintiff Avlis should be reversed, the money verdict of the jury in favor of plaintiff and against Avlis reinstated, and an amended judgment entered in favor of the plaintiff and against Avlis in accordance with this opinion. The portion of the judgment which is in favor of codefendant Modern Masonry should be affirmed.

SHAPIRO, J. P., HAWKINS and O'CONNOR, JJ., concur.

Judgment of the Supreme Court, Nassau County, entered April 2, 1976, modified by deleting therefrom the first decretal paragraph and by substituting therefor a provision awarding judgment to plaintiff against defendant Avlis Contracting Corp., upon the jury verdict, which is hereby reinstated. As so modified, judgment affirmed, with one bill of costs to plaintiff payable by defendant Avlis Contracting Corp. and one bill of costs to defendant Modern Masonry, Inc., payable by plaintiff, and action remanded to Trial Term for entry of an appropriate amended judgment and for further proceedings not inconsistent herewith.