■ JOHN LAGZDINS et al., Respondents, v UNITED WELFARE FUND-SECURITY DIVISION MARRIOTT CORPORATION et al., Defendants and Third-Party Plaintiffs-Appellants. PARIS R. MINUTO CORP., Third-Party Defendant-Respondent.—In an action to recover damages for personal injuries, etc., defendants third-party plaintiffs appeal from (1) an interlocutory judgment of the Supreme Court, Queens County, entered February 20, 1979, which (a) is in favor of the plaintiffs and against defendants after a jury trial limited to the issue of liability and (b) dismissed the third-party complaint, (2) a judgment of the same court, entered April 12, 1979, which (a) awarded plaintiffs damages after a jury trial and (b) dismissed the third-party complaint, and (3) an amended judgment of the same court, dated May 2, 1979. Appeal from the interlocutory judgment dismissed (see *Matter of Aho,* 39 NY2d 241, 248). Appeal from the judgment dismissed. The judgment was superseded by the amended judgment. Amended judgment reversed, on the law, interlocutory judgment vacated and new trial granted on the issue of liability as between all parties in the main action and the third-party action, with costs to abide the event. The verdict as to damages is held in

abeyance pending the new trial, and in the event plaintiffs are successful upon the new trial, judgment shall be entered in their favor in the amounts previously awarded. Plaintiffs John Lagzdins and Peter Akmens (hereafter plaintiffs) are experienced carpenters who were employed by the third-party defendant, Paris R. Minuto Corp. (Minuto), upon the construction of a "Roy Rogers Restaurant". The defendants third-party plaintiffs (hereafter defendants) are the property owner, United Welfare Fund-Security Division Mariott Corporation, and the general contractor, Dominick Fieni & Sons. The plaintiffs were injured when the trusses or roof joists, which they had erected the day before, collapsed. The prefabricated trusses, approximately 50 feet long, were set in place to span the distance between the east and west walls of the structure. To place the trusses, plaintiff John Lagzdins worked on the ground and tied each truss to a crane which lifted the truss to the top of the concrete block walls on which sill blocks had been laid earlier in the day. Plaintiff Akmens, on the east wall, and Mel Leeds— Minuto's foreman—who was working opposite Akmens on the west wall, centered each truss on the marks that had been measured off by Leeds on the sill blocks. Akmens and Leeds then toenailed the truss in place. The work commenced at the rear of the building. The first truss was placed along the south (rear) wall, nailed in two or three places there, and nailed to each side wall. It was braced in addition by two by fours staked to the ground. A fourth employee of Minuto, Frank Gillespie, worked in the middle, applying two rows of braces. After three to five trusses were put up, they were nailed to a bar attached to the first truss. After 8 or 10 trusses were set, a stronger, one-piece brace was put on top. When the front truss was set, it was braced like the first one had been, i.e., supported by two by fours staked to the ground. All the trusses were put in place on the afternoon of the first day that plaintiffs were on the site. On the next morning, plaintiffs measured and cut blocks, which were to be nailed between the trusses before the plywood sheeting was nailed onto the trusses. The procedure entailed nailing the blocks in, removing the temporary bracing, and then nailing down the plywood sheets. While plaintiffs cut the blocks, Leeds and Gillespie worked up on the roof and, by the time they were joined by the plaintiffs, Leeds and Gillespie had put down a few plywood sheets. Plaintiffs went up to the roof at about 10:00 A.M. All four men were working in the southwest (rear) corner of the building. Plaintiffs began to nail blocks and to put down plywood sheeting. After five or six sheets had been nailed down, the trusses collapsed, from front to back. The case went to the jury on three theories of liability: common-law negligence, codified as subdivision 1 of section 200 of the Labor Law; breach of section 240 of the Labor Law (over defendants' objection); and breach of subdivision 6 of section 241 of the Labor Law. Contributory negligence was charged, inasmuch as the accident occurred on August 6, 1975 (see CPLR 1411). In these circumstances, plaintiffs' request for a special verdict was improperly denied. Plaintiffs must, nonetheless, establish on appeal that the evidence supports each theory under which recovery is sought (see *Dore v Long Is. R. R. Co.*, 23 AD2d 502; accord *Dreyer v Tishman Realty & Constr. Co.*, 41 AD2d 628). In order to recover under subdivision 1 of section 200 of the Labor Law, plaintiffs were required to establish that the defendants breached their duty to provide a place of work that is "so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein". The duty is to make the premises safe by the discovery of dangers ascertainable through reasonable diligence and by remedying them or

warning against them *(Employers Mut. Liab. Ins Co. of Wis. v Di Cesare & Monaco Concrete Constr. Corp.,* 9 AD2d 379, 382). The duty to provide a safe place to work is not breached, however, when the injury arises out of a defect in the subcontractor's own methods or through the negligent acts of the subcontractor occurring as a detail of the work *(Persichilli v Triborough Bridge & Tunnel Auth.,* 16 NY2d 136, 145). Absent control over the work, a general contractor is not liable under section 200 for the manner in which operations are carried out by the subcontractor's employees (e.g., *Zucchelli v City Constr. Co.,* 4 NY2d 52; *Employers Mut. Liab. Ins. Co. of Wis. v Di Cesare & Monaco Concrete Constr. Corp., supra,* p 383). An exception to the foregoing rule occurs where the general contractor's supervisor assumes direct responsibility for the method of work performed *(Broderick v Cauldwell-Wingate Co.,* 301 NY 182). Thus, the critical question to be answered with respect to section 200 of the Labor Law was whether the general contractor exercised control over the work of erecting the trusses. Plaintiffs tried to establish the exception to the rule that the general contractor is not responsible for the independent negligent act of his subcontractor (see *Broderick v Cauldwell-Wingate Co., supra)* by showing that the contractor's supervisor, Garber Toka, had assumed direct responsibility for the method of setting the trusses and securing them. Toka testified that he was on the roof "to be sure that they were setting the trusses on the right side of the mark, and so forth." Minuto's foreman, Mel Leeds, testified at an examination before trial, however, that he did not ask Toka any questions about how the trusses were to be secured. Leeds further testified that the way the trusses were erected is "common carpenter procedure". The lifting and placement of the trusses on the marks—marks made by Leeds—and the nailing and bracing of the trusses were done by Leeds and his men, all employees of the subcontractor. On this state of the record and in light of the applicable principles of law, one of the trial court's instructions—to which defendants excepted (although on a different ground)—was clearly erroneous. The trial court instructed the jury that "an owner and a general contractor have obligations to comply with the sections of the Labor Law, and that such duty cannot be avoided even though the worker is injured because of unsafe working conditions that may have been created by his employer." A consideration of the evidence under this instruction did not permit the jury properly to evaluate the applicable principles of law with respect to the liability of the defendant general contractor to provide a safe place to work pursuant to section 200 of the Labor Law. No other instruction clarified the issue. A new trial is, therefore, required. The second theory under which plaintiffs sought recovery is the alleged violation of subdivision 6 of section 241 of the Labor Law. This court has held that this statutory subdivision places "a nondelegable duty upon owners and contractors to vicariously respond in damages for injuries sustained due to the negligence of general contractors or subcontractors" *(Monroe v City of New York,* 67 AD2d 89, 107; cited with approval in Leitner, Torts, 31 Syracuse L Rev 433, 437). A central distinction between this section of the Labor Law and section 200, considered above, is that liability is imposed under subdivision 6 of section 241 irrespective of whether the general contractor or the subcontractor controls or supervises the work. In addition, section 200 provides a general duty to protect the health and safety of workers, whereas section 241 applies to construction, excavation and demolition work. Upon the new trial, the trial court should carefully instruct the jury on the distinction between these two sections of the Labor Law. The jury will thus be able to reach its determination upon a proper consideration of the evidence. In this

vein, we note that the instruction on *res ipsa loquitur* (to which defendants objected) was improper, given the posture of the proof. *Res ipsa loquitur* requires that the plaintiffs show that the person charged with negligence was in sole control of the instrumentality that caused the harm *(Corcoran v Banner Super Market,* 19 NY2d 425) and that the mishap does not normally occur in the absence of negligence *(Galbraith v Busch,* 267 NY 230). The erection of the trusses was, however, under either the full or partial control of the plaintiffs (depending upon how the testimony is evaluated) and it was they who were engaged in removing the temporary bracing when the trusses collapsed. Such proof appears to negate defendants' sole control of the instrumentality that caused the harm, so that an instruction on *res ipsa loquitur* is inappropriate. We now consider the third theory of liability, to wit, the alleged violation of section 240 of the Labor Law. Subdivision 1 of that section provides, as here pertinent, that "in the erection * * * of a building or structure [all contractors and owners and their agents] shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces * * * and other devices * * * as to give proper protection to a person so employed." Defendants objected to the jury being instructed on this statute on the ground that none of the safety devices enumerated therein were at issue in this case. We disagree. The statute's purpose is to maximize the protection afforded workmen engaged in dangerous employment and should be liberally construed *(Bohnoff v Fischer,* 210 NY 172). The bracing at issue here was, of course, used to hold up the trusses and, in that sense, the bracing may be viewed as "consist[ing] of the work itself" (see *Broderick v Cauldwell-Wingate Co.,* 301 NY 182, 187, *supra).* However, the braced trusses also became a place to work and the safety of the entire structure as a work place was dependent upon the adequacy of the bracing. Hence, the braces are within the purview of the statute (cf. *Porter v Avlis Contr. Corp.,* 57 AD2d 222, 227; *Rocha v State of New York,* 45 AD2d 633, mot for lv to app den 36 NY2d 642). What is absolutely essential, however, to support a verdict for the plaintiffs under this theory, is a determination by the jury that the bracing was inadequate and that the inadequate bracing caused the collapse of the trusses. Just such a special verdict distinguishes *Cardile v D'Ambrosia* (72 AD2d 544), a case upon which plaintiffs mistakenly rely for their right to a directed verdict. Contributory negligence of the plaintiffs (which is at issue on the first two theories proposed [see *Monroe v City of New York,* 67 AD2d 89, *supra;* contra *Long v Forest-Fehlhaber,* 74 AD2d 167] inasmuch as the accident occurred prior to Sept. 1, 1975), is not a bar to recovery under section 240 of the Labor Law (see *Haimes v New York Tel. Co.,* 46 NY2d 132; *Koenig v Patrick Constr. Corp.,* 298 NY 313), as plaintiffs unsuccessfully pointed out to the trial court. Finally, it was error to dismiss the third-party complaint. The third-party complaint establishes that defendants third-party plaintiffs did not seek contractual indemnity. Their right to indemnity existed irrespective of the contract (see *Mauro v McCrindle,* 70 AD2d 77). If the plaintiffs are successful upon the retrial on liability, there is no necessity to retry the matter of damages, inasmuch as no objection was raised as to the damages on appeal. The damage awards are held in abeyance pending the new trial (see *Barry v Manglass,* 55 AD2d 1, 13). Rabin, J. P., Cohalan, Martuscello and Weinstein, JJ., concur.