OPINION OF THE COURT
Jack M. Battaglia, J.
*190 Plaintiffs Frank Cangialosi and Nelson Hernandez were employed in the construction of a building at 10 West End Avenue in Manhattan when, on June 14, 2006, they fell from the 20th floor where they were working to the floor below. They allege causes of action based on Labor Law §§ 200, 240 and 241 against defendant Ten West End Avenue Holdings, LLC, the owner of the work site, and defendant Gotham Construction Company, LLC, the general contractor. With this motion, they seek an order, presumably pursuant to CPLR 3212, for summary judgment on liability under their respective Scaffold Law claims (see Labor Law § 240 [1]).
For work within its coverage, Labor Law § 240 (1) requires that owners and contractors “furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.” “[A] violation of section 240 (1) . . . creates absolute liability.” (Zimmer v Chemung County Performing Arts, 65 NY2d 513, 522 [1985]; see also Blake v Neighborhood Hous. Servs. of N.Y. City, 1 NY3d 280, 287 [2003] [“absolute liability” and “strict liability” used interchangeably].)
Plaintiff Cangialosi was the deck foreman, and plaintiff Hernandez was a laborer on Cangialosi’s crew, working on the 20th floor, supplying carpenters with the materials needed to construct the floor. Materials included four-by-four pieces of lumber known as “stringers” and “legs,” as well as “straps” or “cross-braces” and plywood. The stringers were laid parallel to each other, at intervals of four feet, supported by five legs resting on the concrete floor below. The straps or cross-braces were connected perpendicular to the stringers, and together they provided the form or skeleton for the added cement.
According to plaintiffs’ respective verified bills of particulars, “a stringer and/or section of lumber being used as the floor was not properly braced, kicked out, slipped, moved and/or became dislodged, causing [each] plaintiff to fall to the floor below.” Both plaintiffs were standing on the same stringer, and each fell approximately 10 to 11 feet to the 19th floor. Plaintiff Cangialosi testified at his deposition that he “stepped onto another stringer, which kicked out, causing [him] to fall backwards and fall.” (Examination before trial of Frank Cangialosi at 23-24.) Plaintiff Hernandez testified at his deposition that he was “al *191 ready standing” on the stringer when it “moved.” (Examination before trial of Nelson Hernandez at 36.) Defendant Gotham’s construction superintendent, Ambrose Scarimbolo, was asked at his deposition, “If a stringer is braced with a leg properly, should the stringer move at all?,” and he answered, “No.” (Examination before trial of Ambrose Scarimbolo at 43.) Neither plaintiff, nor anyone whom either plaintiff supervised, was responsible for securing the stringers, legs, or cross-braces/ straps.
Plaintiffs’ counsel asserts that “[n]either plaintiff was ever provided with any type of harness, safety belt or lanyard during the course of their work at the 10 West project” (affirmation It 15), but no deposition testimony or other evidence is cited in support of the assertion.
With a response to notice to admit, defendant Ten West End Avenue Holdings, LLC admits that on June 14, 2006 it owned the property at 10 West End Avenue, Manhattan, and defendant Gotham Construction Company, LLC admits that it was the general contractor. Plaintiffs have, therefore, established prima facie that each defendant is subject to liability pursuant to Labor Law § 240 (1).
“Not every worker who falls at a construction site . . . gives rise to the extraordinary protections of Labor Law § 240 (1).” (Narducci v Manhasset Bay Assoc., 96 NY2d 259, 267 [2001].) “Rather, liability is contingent upon the existence of a hazard contemplated in section 240 (1) and the failure to use, or the inadequacy of, a safety device of the kind enumerated therein.” (Id.) “The hazard posed by working at an elevation is that, in the absence of adequate safety devices (e.g., scaffolds, ladders), a worker might be injured in a fall.” (Id. at 268.)
The “elevation-related hazards” contemplated by the statute (see Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 500 [1993])
“are those related to the effects of gravity where protective devices are called for either because of a difference between the elevation level of the required work and a lower level or a difference between the elevation level where the worker is positioned and the higher level of the materials or load being hoisted or secured.” (Rocovich v Consolidated Edison Co., 78 NY2d 509, 514 [1991].)
“[T]o establish a prima facie case pursuant to Labor Law § 240 (1), a plaintiff must demonstrate that the *192 risk of injury from an elevation-related hazard was foreseeable, and that an absent or defective protective device of the type enumerated in the statute was a proximate cause of the injuries alleged.” (Shipkoski v Watch Case Factory Assoc., 292 AD2d 587, 588 [2d Dept 2002]; see also Bailadores v Southgate Owners Corp., 40 AD3d 667, 669-670 [2d Dept 2007].)
“[R]ecogniz[ing] that sound scaffolds and ladders do not simply break apart,” the courts have crafted a “presumption of employer liability when a scaffold (or ladder) collapses.” (Blake v Neighborhood Hous. Servs. of N.Y. City, 1 NY3d at 285-286.) “Proof of a collapse of a safety device constitutes a prima facie showing that the statute was violated and that the violation was a proximate cause of the worker’s injuries, thereby establishing the claimant’s entitlement to judgment as a matter of law on the issue of liability.” (Dos Santos v State of New York, 300 AD2d 434 [2d Dept 2002]; see also Blake v Neighborhood Hous. Servs. of N.Y. City, 1 NY3d at 289 n 8; Panek v County of Albany, 99 NY2d 452, 458 [2003]; Danton v Van Valkenburg, 13 AD3d 931, 931-932 [3d Dept 2004]; Andino v BFC Partners, 303 AD2d 338, 339 [2d Dept 2003].)
The “presumption of employer liability” (see Blake v Neighborhood Hous. Servs. ofN.Y. City, 1 NY3d at 285) applies where there is a collapse of any of the “elevation-related safety devices” (see Ball v Cascade Tissue Group-N.Y., Inc., 36 AD3d 1187, 1188 [3d Dept 2007]), including the “functional equivalent of a scaffold” (see De Jara v 44-14 Newtown Rd. Apt. Corp., 307 AD2d 948, 949-950 [2d Dept 2003] [fire escape]; see also Dos Santos v State of New York, 300 AD2d at 434 [elevated lift truck]; Becerra v City of New York, 261 AD2d 188, 189 [1st Dept 1999] [“unsecured plywood boards . . . served, conceptually and functionally, as an elevated platform or scaffold”]; Lightfoot v State of New York, 245 AD2d 488, 488 [2d Dept 1997] [“truck . . . used as a platform”]).
In a case similar to this one, Broderick v Cauldwell-Wingate Co. (301 NY 182 [1950]), the plaintiff carpenter was injured when the “formwork which he was building for a concrete floor collapsed”; a “4 x 6 broke at a knothole, precipitating the deck and [two] men twenty-five or thirty feet to the ground” (id. at 185-186). The Court of Appeals held that section 240 (1) did not apply, because “[t]he formwork was not intended as a place of work but, on the contrary, consisted of the work itself.” (Id. at 187.)
*193 “The old rule,” however, “that anything which constituted a part of the work itself could not at the same time constitute a scaffold within section 240 . . . appears to have given way to the extent that the work itself may now become part of the place to work and may fall within the statute.” (Kennedy v McKay, 86 AD2d 597, 598 [2d Dept 1982]; see also Lagzdins v United Welfare Fund-Sec. Div. Marriott Corp., 77 AD2d 585, 588 [2d Dept 1980].)
It is now simply said — perhaps too simply — that “[t]he collapse of a work site itself constituted] a prima facie violation of Labor Law § 240 (1).” (See Beard v State of New York, 25 AD3d 989, 991 [3d Dept 2006] [internal quotation marks and citations omitted]; see also Bradford v State of New York, 17 AD3d 995, 997 [4th Dept 2005]; Richardson v Matarese, 206 AD2d 353, 353-354 [2d Dept 1994]; but see Futo v Brescia Bldg. Co., 302 AD2d 813, 815 [3d Dept 2003].)
Assuming an elevation-related hazard, and, therefore, “a foreseeable need for safety devices” (see Bailadores v Southgate Owners Corp., 40 AD3d at 669), “the failure to provide any protective devices for workers at the worksite establishes an owner or contractor’s liability as a matter of law” (see Zimmer v Chemung County Performing Arts, 65 NY2d at 521; see also Felker v Corning Inc., 90 NY2d 219, 224-225 [1997]; Hamilton v Kushnir Realty Co., 51 AD3d 864, 865 [2d Dept 2008]).
“The plaintiff, in support of [a] motion for summary judgment, established] a prima facie case by presenting evidence that no safety devices were provided at the time of the accident.” (See Danielewski v Kenyon Realty Co., 2 AD3d 666, 667 [2d Dept 2003]; see also Smith v Cari, LLC, 50 AD3d 879, 880 [2d Dept 2008]; Zender v Madison-Oneida County BOCES, 46 AD3d 1361, 1362 [4th Dept 2007]; Valensisi v Greens at Half Hollow, LLC, 33 AD3d 693, 695-696 [2d Dept 2006]; Leshaj v Long Lake Assoc., 24 AD3d 928, 929-930 [3d Dept 2005]; Lajqi v New York City Tr. Auth., 23 AD3d 159 [1st Dept 2005]; Olsen v James Miller Mar. Serv., Inc., 16 AD3d 169, 171 [1st Dept 2005]; Orellana v American Airlines, 300 AD2d 638, 639 [2d Dept 2002].)
The plaintiff is not “required to present evidence as to which particular safety devices would have prevented his injury” (see Noble v AMCC Corp., 277 AD2d 20, 21 [1st Dept 2000]; see also Cody v State of New York, 52 AD3d 930, 931 [3d Dept 2008]). And “where there is no view of the evidence ... to support a *194 finding that the absence of safety devices was not a proximate cause of the injuries,” summary judgment on liability is appropriate. (See Zimmer v Chemung County Performing Arts, 65 NY2d at 524; see also Felker v Corning Inc., 90 NY2d at 225.)
In sum, therefore, a worker engaged in construction or another activity listed in Labor Law § 240 (1) establishes prima facie a violation of the statute with proof in admissible form that she or he was exposed to an elevation-related risk by the work, and that either she or he was provided with no safety device to protect against the risk, or that she or he was provided with a device that did not give adequate protection. A claim for damages is further established prima facie with proof of injury proximately caused by the violation. Here, plaintiffs purport to establish defendants’ liability on alternative grounds:
“First, the elevated work site provided to the plaintiffs (the stringer) was inadequate to protect them from the ordinary risks of falling. Specifically, the stringer upon which the plaintiffs were standing kicked out and collapsed. Second, no additional safety devices such as belts, harnesses, pullies [sic], ropes, etc., were provided to them.” (Affirmation It 52.)
Plaintiffs were clearly engaged in construction that exposed them to the elevation-related risk of falling from the place at which they were working, what was to become the 20th floor of the building, to the floor some 10 or 11 feet below. Although plaintiffs assert that defendants provided them with no safety device to protect against the risk (other, allegedly, than that created by the stringers and attached material), as previously noted, they do not cite to any evidence to support the assertion.
Plaintiffs rely upon Hartley v Spartan Concrete (172 AD2d 586 [2d Dept 1991]) and Farrell v City of New York (162 AD2d 655 [2d Dept 1990]) as support for their alternate basis for liability. But those decisions are based upon conclusions that the elevated structure at issue was a “scaffold” or other safety device for purposes of Labor Law § 240 (1). (See also Frierson v Concourse Plaza Assoc., 189 AD2d 609, 610 [1st Dept 1993] [“structure consisting of wooden planks supported by a cross beam”].) Were Broderick v Cauldwell-Wingate Co. (301 NY 182 [1950]) still good law, plaintiffs could not make their prima facie showing with proof only of the improper movement of the stringer assembly, because the assembly “consisted of the work itself’ (id. at 187). Now plaintiffs may succeed if they show that *195 the assembly is “part of the place to work.” (See Kennedy v McKay, 86 AD2d at 598.)
Generally, “whether or not a device is a scaffold would ordinarily be a factual issue,” but a plaintiff may make a showing “enough to support a prima facie case that the structure was a scaffold as a matter of law.” (See Frierson v Concourse Plaza Assoc., 189 AD2d at 610.) Clearly, the primary characteristic of a scaffold or “other device” for purposes of Labor Law § 240 (1) must be that it is designed or intended to protect workers from elevation-related risks. (See Owusu v Hearst Communications, Inc., 52 AD3d 285, 286 [1st Dept 2008]; Gelo v City of New York, 34 AD3d 636, 636-637 [2d Dept 2006]; Foote v Lyonsdale Energy Ltd. Partnership, 23 AD3d 924, 926 [3d Dept 2005]; Gallagher v Andron Constr. Corp., 21 AD3d 988, 989 [2d Dept 2005]; Parsuram v I.T.C. Bargain Stores, Inc., 16 AD3d 471, 472 [2d Dept 2005]; De Jara v 44-14 Newtown Rd. Apt. Corp., 307 AD2d 948, 950 [2003].)
Although not inconsistent with the authority just cited, which is mostly from the Second Department, there are opinions, mostly from the other Departments, that speak primarily of the structure as the only means of access to the elevated work site (see Griffin v New York City Tr. Auth., 16 AD3d 202, 203 [1st Dept 2005]; Crimi v Neves Assoc., 306 AD2d 152, 153 [1st Dept 2003]; Kyle v City of New York, 268 AD2d 192, 198 [1st Dept 2000]; Brennan v RCP Assoc., 257 AD2d 389, 391 [1st Dept 1999]); or as “a tool used in the performance of the plaintiffs work” (see Ryan v Morse Diesel, 98 AD2d 615, 616 [1st Dept 1983]; see also Milanese v Kellerman, 41 AD3d 1058, 1061 [3d Dept 2007]; Donohue v CJAM Assoc., LLC, 22 AD3d 710, 711-712 [2d Dept 2005]; Paul v Ryan Homes, 5 AD3d 58, 61 [4th Dept 2004]; Missico v Tops Mkts., 305 AD2d 1052, 1052-1053 [4th Dept 2003]).
As important as access to the work site and other “tools” of construction may be, it is not immediately evident that they meet the safety purposes of Labor Law § 240 (1). It may be, therefore, that many of the cases in which a structure or device was found to be the “functional equivalent” of a scaffold or other safety device might be fairly characterized as involving “the collapse of the work site itself, rather than a safety device enumerated in Labor Law § 240 (1).” (See Richardson v Matarese, 206 AD2d at 353-354.) And injury as a result of the collapse of the work site itself as establishing a prima facie violation of Labor Law § 240 (1) (see id.-, Beard v State of New York, 25 *196 AD3d at 991; Bradford v State of New York, 17 AD3d at 997) might be understood as giving rise to a presumption of absence or failure of safety devices, sufficient to shift the burden of production onto the defendant.
Here, plaintiffs make no showing that the stringer assembly was designed or intended, even in part, for the protection of the workers. Plaintiffs contend, however, that “workers must walk on the stringers when performing the work that was taking place at the time of the accident,” citing the deposition testimony of defendant Gotham’s construction superintendent. (Affirmation 1Í1Í19, 24.) Mr. Scarimbolo testified with affirmative answers to questions that workers “are required to be working on the stringers to create the floor . . . put the ribs down and do the additional tasks”; the workers are “supposed to be standing on [the stringers] as they’re doing this work.” (Examination before trial of Ambrose Scarimbolo at 26-27.)
This testimony is sufficient to establish prima facie that the stringer assembly was “part of the place to work” (see Kennedy v McKay, 86 AD2d at 598), in that it was necessary, or at least contemplated (see Barraco v First Lenox Terrace Assoc., 25 AD3d 427, 428 [1st Dept 2006]), that plaintiffs Cangialosi and Hernandez would stand or walk on the stringers to do their jobs. It might fairly be said that “the braced [stringers] . . . became a place to work and the safety of the entire structure as a work place was dependent upon the adequacy of the bracing.” (See Lagzdins v United Welfare Fund-Sec. Div. Marriott Corp., 77 AD2d at 588.)
Moreover, although there are few opinions that articulate the rule that the collapse of a work site itself constitutes a prima facie violation of Labor Law § 240 (1) (see Beard v State of New York, 25 AD3d at 991; Bradford v State of New York, 17 AD3d at 997; but see Futo v Brescia Bldg. Co., 302 AD2d at 815), the rule would apply to the stringer assembly involved here. Indeed, although not articulating the rule, there are other opinions that found a prima facie violation of Labor Law § 240 (1) on proof only that a roof or floor “gave way” or “collapsed” (see Kok Choy Yeen v NWE Corp., 37 AD3d 547, 549 [2d Dept 2007]; Dyrmyshi v Clifton Place Dev. Group, Inc., 7 AD3d 564, 565 [2d Dept 2004]; Centeno v 80 Pine, 294 AD2d 326, 326 [2d Dept 2002]; Shipkoski v Watch Case Factory Assoc., 292 AD2d 587, 589 [2d Dept 2002]; Charles v Eisenberg, 250 AD2d 801, 802 [2d Dept 1998]; Robertti v Powers Chang, 227 AD2d 542, 543 [2d Dept 1996]), without any suggestion that the roof or floor was *197 the “functional equivalent” of a scaffold or other safety device. These cases fairly support a conclusion that proof only of the collapse of the work site prima facie establishes a violation of Labor Law § 240 (1).
“[W]here the uncontroverted evidence establishes that the safety device collapsed, slipped or otherwise failed to support him or her, the plaintiff demonstrates a prima facie entitlement to partial summary judgment under Labor Law § 240 (1).” (Ball v Cascade Tissue Group-N.Y., Inc., 36 AD3d 1187, 1188 [3d Dept 2007].) “Whether the device provided proper protection is a question of fact, except when the device collapses, moves, falls, or otherwise fails to support the plaintiff and his materials.” (Nelson v Ciba-Geigy, 268 AD2d 570, 572 [2d Dept 2000].) As previously noted, plaintiff Cangialosi testified that the stringer he stepped on “kicked out” (see Davis v Pizzagalli Constr. Co., 186 AD2d 960, 961 [3d Dept 1992]), and plaintiff Hernandez testified that the stringer “moved.” Whether the stringer assembly is considered the “functional equivalent” of a safety device or as part of the work site itself, plaintiffs establish prima facie that the stringer assembly failed to support either plaintiff, and that defendants, therefore, violated Labor Law § 240 (1).
In opposition, defendants contend that “Labor Law § 240 liability can not be premised on [their] failure to provide any additional safety devices which would have prevented the plaintiffs’ fall,” because “the use of harnesses, safety belts or lanyard [sic] were [sic] not feasible during the type of work the plaintiffs were performing.” (Affirmation in opposition U 11.) Defendants proffer a copy of a fall protection plan dated October 2002 of Sorbara Construction Corp., the employer of plaintiffs Cangialosi and Hernandez. Defendants also contend that, in any event, “there is clearly a question of fact as to what the proximate cause of Mr. Hernandez’s accident was,” purportedly created by a copy of a job site incident report that states, in effect, that Mr. Hernandez’s fall was caused by Mr. Cangialosi. (Affirmation in opposition H1Í 4, 14.)
Neither the fall protection plan nor the job site incident report, however, is supported by deposition testimony or an affidavit by a person with knowledge, nor is either document otherwise rendered admissible as evidence. Since neither of defendants’ contentions is accompanied by evidence in admissible form of the material facts upon which the contention rests, and no acceptable excuse appears, defendants have, for this reason alone, failed to raise a triable issue. (See Zuckerman v City of New York, 49 NY2d 557, 562 [1980].)
*198 “Once the plaintiff makes a prima facie showing the burden then shifts to the defendant, who may defeat plaintiffs motion for summary judgment only if there is a plausible view of the evidence — enough to raise a fact question — that there was no statutory violation and that plaintiffs own acts or omissions were the sole cause of the accident.” (Blake v Neighborhood Hous. Servs. of N.Y. City, 1 NY3d at 289 n 8; see also Panek v County of Albany, 99 NY2d at 458.)
Where the plaintiffs prima facie showing is based upon the absence of safety devices, a defendant’s “argument that failure to provide an appropriate safety device was either impracticable under the circumstances or would not have prevented the accident is unavailing” (see Pichardo v Urban Renaissance Collaboration Ltd. Partnership, 51 AD3d 472, 472-473 [1st Dept 2008]; see also Zimmer v Chemung County Performing Arts, 65 NY2d at 519, 523).
“[W]here a plaintiff’s own actions are the sole proximate cause of the accident, there can be no liability.” (Cahill v Triborough Bridge & Tunnel Auth., 4 NY3d 35, 39 [2004].) But “if a statutory violation is a proximate cause of an injury, the plaintiff cannot be solely to blame for it.” (Blake v Neighborhood Hous. Servs. of N.Y. City, 1 NY3d at 290.) “[RJegardless of the precise manner in which the accident occurred, a defendant is not absolved from liability where ... a plaintiffs injuries are at least partially attributable to the defendant’s failure to provide protection as mandated by the statute.” (Common v City of New York, 21 AD3d 196, 201 [1st Dept 2005].)
As to proximate cause and the acts or omissions of third parties, “[w]here an injury results from a separate hazard wholly unrelated to the risk which brought about the need for the safety device in the first instance, no section 240 (1) liability exists.” (Nieves v Five Boro A.C. & Refrig. Corp., 93 NY2d 914, 916 [1999]; see also Cordero v Kaiser Org., 288 AD2d 424, 426 [2d Dept 2001].) “An independent intervening act may constitute a superseding cause, and be sufficient to relieve a defendant of liability, if it is of such an extraordinary nature or so attenuated from the defendants’ [sic] conduct that responsibility for the injury should not reasonably be attributed to them [sic].” (Gordon v Eastern Ry. Supply, 82 NY2d 555, 562 [1993]; see also Alomia v New York City Tr. Auth., 292 AD2d 403, 405 [2d Dept 2002]; Cordero v Kaiser Org., 288 AD2d at 426.)
These principles are applied when the act or omission of a coworker is said to have been a proximate cause of the injury. *199 (See Van Eken v Consolidated Edison Co. ofN.Y., 294 AD2d 352, 353 [2d Dept 2002]; deSousa v Dayton T. Brown, Inc., 280 AD2d 447, 448 [2d Dept 2001]; see also Haulotte v Prudential Ins. Co. of Am., 266 AD2d 38, 39 [1st Dept 1999]; Salzler v New York Tel. Co., 192 AD2d 1104, 1105 [4th Dept 1993].) In appropriate circumstances, “a reasonable fact-finder might conclude that the coworker’s conduct was the sole proximate cause of the plaintiffs injuries or that the coworker’s conduct constituted an unforeseeable superseding, intervening act.” (Bernai v City of New York, 217 AD2d 568, 568-569 [2d Dept 1995]; see also Kok Choy Yeen v NWE Corp., 37 AD3d at 549.)
Here, the inadmissible job site incident report states:
“Mr. Hernandez and his partner were walking across the 4"x4" stringers from one location to another location to land materials for the next deck erection. Mr. Hernandez’s partner had fallen while walking the stringers. As he fell backwards, he reached out to grab onto something to break his fall. He grabbed onto Mr. Hernandez and caused Mr. Hernandez to also fall to the freshly poured deck below.” (Job site incident report, exhibit A to affirmation in opposition.)
Even if admissible evidence supported the version of the accident described in the report, it would not suffice to create a triable issue. Since Mr. Cangialosi’s “reaching] out to grab onto something to break his fall” was a direct and foreseeable consequence of the improper movement of the stringer assembly, Mr. Hernandez’s injury cannot be said to have “result[ed] from a separate hazard unrelated to the risk which brought about the need for the safety device in the first instance” (see Nieves v Five Boro A.C. & Refrig. Corp., 93 NY2d at 916); and Mr. Cangialosi’s conduct was not an “unforeseeable superseding, intervening act” (see Bernal v City of New York, 217 AD2d at 569).
In the absence of a triable issue, plaintiffs Cangialosi and Hernandez are entitled to summary judgment of liability on their respective claims under Labor Law § 240 (1). No evidence is presented, however, in support of the derivative claim of plaintiff Shanell Saunders, alleged to be the wife of plaintiff Hernandez. Although, of course, the court’s ruling as to defendants’ liability under Labor Law § 240 (1) inures to her benefit, it cannot be said that she has made a prima facie showing on her claim for loss of consortium. (See Reiser v Dabah, 288 AD2d 285, 285 [2d Dept 2001].)
*200 To the extent plaintiffs’ motion seeks summary judgment on liability on the respective claims of plaintiffs Cangialosi and Hernandez under Labor Law § 240 (1), the motion is granted. To the extent the motion seeks summary judgment on the cause of action alleged by plaintiff Saunders, it is denied.